460

## CIRCUIT COURT OF AUGUSTA COUNTY

Mark Hope,
Administrator
of the Estate of
Frances W. Hildebrand,
deceased

v.

Commonwealth of Virginia

April 7, 2011

Case No. CL100000916

By Judge Victor V. Ludwig

This case involves a suit against the Commonwealth of Virginia under the Virginia Tort Claims Act (the Act) for negligence, public nuisance, and gross negligence. The plaintiff, Mark Hope, Administrator of the Estate of Frances W. Hildebrand, prays for compensatory damages, costs, and pre-judgment interest accrued from the date of the car accident that is the basis of this suit. The Commonwealth filed a Demurrer and Plea of Sovereign Immunity and, shortly thereafter, moved this Court for leave to amend its Demurrer and Plea of Sovereign Immunity. For the reasons set forth in the Motion and supporting memorandum, the Court grants the Commonwealth's Motion for Leave to Amend its Demurrer and Plea of Sovereign Immunity.

Accordingly, the Commonwealth's Amended Demurrer and Plea of Sovereign Immunity, submitted contemporaneously with its Motion for Leave to Amend, is now before the Court. The Court heard the parties

argue this matter on November 9, 2010, and, after carefully considering the arguments and supporting memoranda, I am now prepared to rule.

*Facts*

On the morning of December 29, 2008,[1] Frances W. Hildebrand drove her vehicle northbound on Route 11 in Augusta County. As she approached the intersection of Route 11 and Route 871, her vehicle left the right side of the pavement and fell onto a low shoulder. The shoulder dropped more than nine inches from the surface of the road, and the drop-off caused Ms. Hildebrand to lose control of her vehicle and strike an embankment. Ms. Hildebrand died at the scene of the accident.

Hope, who is Ms. Hildebrand's son and the qualified administrator of her estate, alleges that the nine-inch shoulder drop-off at this location on Route 11 is in violation of applicable safety regulations. He alleges that the lines on the road at this location are painted in a way that leads northbound traffic off the road and onto the low shoulder. He also alleges that the drop-off caused numerous accidents and that the Commonwealth had received numerous complaints regarding the condition of the road and shoulder at this location, yet the Commonwealth failed to remedy the condition of the road. On these grounds, Hope alleges that the Commonwealth was negligent in designing, constructing, inspecting, and maintaining the road; in failing to supervise its agents and employees in designing, constructing, paving, and maintaining the road; and in failing to warn motorists of the dangerous condition of the road. On these same grounds, Hope alleges that the Commonwealth created, maintained, and failed to warn of a public nuisance at this location, and also that the Commonwealth's negligence constituted gross negligence. Hope timely notified the Commonwealth Division of Risk Management of his claim against the Commonwealth pursuant to Va. Code § 8.01-195.6.

The Commonwealth moves this Court to dismiss each count of Hope's Complaint. First, the Commonwealth's primary argument is that Hope's claims are based on acts or omissions of employees or agents of the Virginia Department of Transportation (VDOT) that fall within the "legislative function" of that agency and are therefore excluded from the Act's limited waiver of the Commonwealth's sovereign immunity. Second, the Commonwealth argues that the allegation of negligence in failing to warn motorists of the shoulder drop-off is not actionable because Hope did not include the alleged failure to warn in his Notice of Claim to the Virginia Division of Risk Management, and therefore the Act's limited waiver of the Commonwealth's sovereign immunity does not apply to that claim.

---

[1] The Complaint alleges that the accident occurred on December 29, 2008 (Complaint, ¶ 3), but separately alleges that the decedent's injuries were sustained on December 28, 2008. (Complaint, ¶ 22). I assume that one or the other of these allegations is in error.

Third, the Commonwealth asserts that Hope is not entitled to pre-judgment interest under the Act. Finally, the Commonwealth argues (seemingly as a catch-all) that Hope has otherwise failed to state a claim for negligence, nuisance, and gross negligence.

*Analysis*

The Commonwealth of Virginia is a sovereign entity. *See Alden v. Maine*, 527 U.S. 706, 713–15 (explaining how the federal system established by the Constitution of the United States preserves the sovereign status of the States). As a sovereign, the Commonwealth is absolutely immune from liability for the tortious acts of its agents, employees, and servants absent express statutory or constitutional provisions waiving immunity. *Maddox v. Commonwealth*, 267 Va. 657, 661 (2004); *University of Virginia v. Carter*, 267 Va. 242, 244 (2004); *Baumgardner v. Southwestern Virginia Mental Health Inst.*, 247 Va. 486, 489 (1994); *Bowers v. Commonwealth, Dep't of Highways & Transp.*, 225 Va. 245, 254 (1983); *Virginia Elec. & Power Co. v. Hampton Redevel. & Hous. Auth.*, 217 Va. 30, 32 (1976); *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 456–57 (1961); *Kellam v. School Bd. of the City of Norfolk*, 202 Va. 252, 254 (1960); *Eriksen v. Anderson*, 195 Va. 655, 657 (1954).

The Virginia Tort Claims Act, Va. Code § 8.01-195.1 *et seq.*, provides such an express waiver:

> [T]he Commonwealth shall be liable for claims for money . . . on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment under circumstances where the Commonwealth . . . if a private person, would be liable to the claimant for such damage, loss, injury, or death.

Va. Code Ann. § 8.01-195.3 (2010). The waiver of immunity under the Act is limited, however, by several enumerated exceptions. Among them, and germane to this matter, is an exception for "[a]ny claim based upon . . . the legislative function of any agency subject to the provisions of this article." *Id.* at § 8.01-192.3(2). In other words, the Act waives the Commonwealth's immunity except for (among other instances) claims based on an agency's exercise of its legislative function; against such claims the Commonwealth's immunity remains intact. In light of the facts and arguments before the Court, the primary issue is whether the Commonwealth's (and more specifically, VDOT's) acts or omissions, alleged by Hope to be negligent, grossly negligent, and a nuisance, fall within the legislative functions of that agency.

To resolve this question, the Court must discern what Va. Code § 8.01-195.3 means by "the legislative function of any agency" of the Commonwealth. Unfortunately, the General Assembly did not include the phrase "legislative function" among the defined terms in the Act. Nor has the Supreme Court of Virginia provided much guidance. In its supporting memorandum, the Commonwealth notes that *Maddox v. Commonwealth*, 267 Va. 657 (2004), is the Court's only decision to interpret the meaning of this term, and I have found no other. *Maddox*, however, does not greatly illuminate the scope and meaning of the term. Either the meaning is so plain that no authority is thought to be needed to explicate it (which defies my experience in deciding this matter), or it remains undefined because courts have resolved previous cases on grounds that did not require that they address the issue.

Most sovereign immunity cases are analyzed by determining whether the alleged state action occurred in the performance of a governmental or discretionary function. Under this view, speaking generally, the sovereign is immune from liability arising from negligence in the performance of governmental or discretionary functions, but it may be liable for negligence associated with the performance of "proprietary" functions. *See, e.g., Burson v. City of Bristol*, 176 Va. 53, 63 (1940). The Commonwealth urges, however, that the traditional governmental/proprietary function rubric, which has guided courts in determining the immunity of municipalities and agents of the Commonwealth, is not applicable for the purpose of determining whether the acts or omissions of an agency of the Commonwealth fall within its "legislative functions" under the Act.

The distinction urged by the Commonwealth is sensible in light of the contrast between the absolute immunity enjoyed the Commonwealth, on one hand, and the qualified immunity enjoyed by its agents, employees, servants, and municipalities, on the other. *See James v. Jane*, 221 Va. 43, 53 (1980) ("It is proper that a distinction be made between the state, whose immunity is absolute unless waived, and the employees and officials of the state, whose immunity is qualified, depending upon the function they perform and the manner of performance."). *See also Hoggard v. Richmond*, 172 Va. 145, 147–48 (1939) (describing the distinction between a city's governmental functions, in the exercise of which the city is immune from liability, and proprietary functions, for which the city is not immune from liability). But these common law distinctions must be considered in light of the fact that the Act has waived a portion of the Commonwealth's absolute immunity. The question, then, is not whether the immunity of the Commonwealth is of a different stripe from that of its municipalities; rather, the question is whether the specific limitation on the Commonwealth's liability under the Act (for the legislative functions of agencies of the Commonwealth) mirrors the common law's limitation on municipalities' liability (for their governmental functions).

This is apparently an unresolved question. Hope insists, "there is no reason to treat the Commonwealth any differently than a municipal corporation under these types of facts." *Memorandum in Opposition*, at 12. Some courts have adopted this view. For instance, in *Farndon v. Commonwealth*, 49 Va. Cir. 401 (Loudoun County 1999), a case on which Hope relies, the Court flatly stated that "[w]hile *Freeman v. City of Norfolk*, 221 Va. 57, 266 S.E.2d 885 (1980), dealt with a municipality, the same principle of law is appropriate" in cases against the Commonwealth, but the Court offered no authority for this declaration. *Farndon*, 49 Va. Cir. at 401. Other courts have apparently assumed that the legislative functions of agencies are conceptually equivalent to the governmental functions of municipalities. In *Vivian v. Honda Motor Co.*, 64 Va. Cir. 297 (Fairfax County 2004), for example, the Court dismissed the plaintiff's claims for "negligent design, construction, maintenance, and signposting" of a public road and sustained the Commonwealth's plea of sovereign immunity. *Id.* at 299. Regarding the meaning of the term "legislative function" in the Tort Claims Act, the Court concluded:

> Legislative functions have been defined as those performed exclusively for public or governmental purposes; their performance is discretionary. Such functions are to be contrasted with proprietary ones, for which the government does not have immunity.
>
> Courts have found street design to be a legislative function, as to which the Commonwealth retains immunity. On the other hand, road maintenance has been held to be proprietary.

*Id.* at 298 (citations omitted). This definition of "legislative function" essentially appropriates the defining characteristics of "governmental functions," that is, the *Vivian* decision rendered the term "legislative function" tantamount to the terms "governmental functions" or "discretionary functions," as those terms are understood in the context of analyzing the immunity of a municipality or agent of the Commonwealth. Indeed, the Court relied primarily on *Jones v. City of Williamsburg*, 97 Va. 722 (1900), to support its analysis, *id.*, and *Jones* involved a claim against a municipality, not against the Commonwealth itself. The Court in *Vivian* also cited *Bialk v. City of Hampton*, 242 Va. 56 (1991), and *Harrell v. City of Norfolk*, 265 Va. 500 (2003), also cases involving claims against municipalities. *Vivian*, 64 Va. Cir. at 298.

In *Jones*, the Supreme Court observed that a municipality is endowed with "powers and duties to be exercised and performed exclusively for public, governmental purposes. These powers are *legislative* and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them or from their improper or

negligent exercise." *Jones*, 97 Va. at 723–24 (emphasis added). Given such expansive phrasing, one understands how the Court in *Vivian* conflated the concept of "legislative functions" and that of "governmental functions." But *Jones* cannot stand for this conflation for two reasons. First, as mentioned above, the sovereign immunity issue in *Jones* related specifically to a claim against a municipality, not against the Commonwealth itself. Second, and more importantly, the Court decided *Jones* more than eighty years prior to the passage of the Act. Therefore, the Court's passing reference in *Jones* to the "legislative" powers of a municipality hardly disposes of the issue of what the Act means by the term "legislative functions" of an agency of the Commonwealth. *Jones* simply does not and cannot conclusively resolve the question of whether the governmental and discretionary functions of a municipal corporation are tantamount, or even analogous, to the legislative functions of an agency of the Commonwealth.

The Commonwealth's argument for the distinction between these two concepts has some support from *Maddox*, in which the Court declared: "*For purposes of today's decision*, we do not equate a municipality's exercise of a governmental function with the exercise of a legislative function by an agency of the Commonwealth." *Maddox*, 267 Va. at 663 (emphasis added). The emphasized portion of this passage, however, could suggest two things. First, it clearly suggests that, at least under some circumstances, the Court recognizes a difference between a "municipality's exercise of a governmental function" and "the exercise of a legislative function by an agency of the Commonwealth." Were it otherwise, the Court's refusal to equate the two would make no sense. However, it might also suggest that the Court meant to confine this distinction to the facts before it. In light of this qualification, this passage does not appear to support the proposition that a municipality's governmental functions are *categorically* distinct from an agency's legislative functions.

Consistent with that final observation, as the Court acknowledged in *Maddox*, "the rationale underlying our decisions holding that a municipality's planning and designing its streets is a governmental function also supports the conclusion that the design of a sidewalk by an agency of the Commonwealth is a legislative function." *Id.* The Court also quoted extensively from *Jones* (which, as noted above, involved the issue of immunity for a municipality):

> [T]he right to regulate the use of the highways of the State or of the streets of a city is clearly a governmental power, and its exercise, whether by the State or by a municipal corporation as an agency of the State, is legislative and discretionary; and being legislative and discretionary, a municipal corporation, as an arm of the State, is no more liable for the failure to

exercise the power or for its improper exercise than the State itself would be.

*Id.* at 664 (quoting *Jones*, 97 Va. at 725). The *Maddox* decision also cites several cases involving claims against municipalities, including *City of Norfolk v. Hall*, 175 Va. 545 (1940), *Freeman v. City of Norfolk*, 221 Va. 57 (1980), and *Taylor v. City of Charlottesville*, 240 Va. 367 (1990), as support for finding that the acts or omissions alleged in *Maddox* fell within the "legislative functions" of an agency. Thus, the Court's reluctance to "equate a municipality's exercise of a governmental function with the exercise of a legislative function by an agency of the Commonwealth," *Maddox*, 267 Va. at 663, must be viewed in light of its reliance both on its municipal liability rationale as well as cases involving municipal liability in order to determine whether the conduct at issue fell within an agency's legislative functions.

It is clear from the analysis in *Maddox* that a municipality's exercise of governmental or discretionary functions is, at least conceptually, closely tied to an agency's exercise of its legislative functions, notwithstanding the Court's refusal to equate the two in that case. Perhaps it is fair to conclude from *Maddox* that the two concepts are distinct, but it is also fair to conclude that the governmental/proprietary function distinction in the context of a municipality is a useful frame of reference in analyzing whether a specific act or omission falls within an agency's legislative functions.

Additional support for distinguishing sovereign immunity analysis in the context of the Commonwealth from that in the context of municipalities is found within the Act itself, which declares that no provision of the Act shall be "applicable to any county, city, or town in the Commonwealth or be so construed as to remove or in any way diminish the sovereign immunity of any county, city, or town in the Commonwealth." Va. Code Ann. § 8.01-195.3 (2011). The distinction is also supported by decisions holding that the immunity of municipalities is distinct from that of counties:

> The rules established by the courts concerning municipal corporations have but slight application to counties organized as ours are. Our counties are parts of the state, political subdivisions of the state, created by the sovereign power for the exercise of the functions of local government. . . .
>
> A municipal corporation proper is created mainly for the interest, advantage, and convenience of its locality and its people.
>
> A county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization,

of the means of travel and of transport, and especially for the general administration of justice.

> With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, *and are in fact but a branch of the general* administration of that policy.

*Fry v. Albemarle County*, 86 Va. 195, 197–98 (1890) (internal citations omitted). Under the same rationale, the Court has likewise held that the immunity of county school boards is distinct from that of municipalities. *See, e.g., Mann v. Arlington Co. Bd.*, 199 Va. 169 (1957). This abundant authority indirectly supports the Commonwealth's proposed distinction.

With respect to the plaintiff's specific claims, the Court said:

> Deciding whether the plan and design of the sidewalk at issue would include installing a guardrail along the edge of the sidewalk and/or backfilling the area adjacent to the sidewalk necessarily called for the exercise of discretion by an agency of the Commonwealth. It required the agency to determine whether public funds should be expended to install those particular safety features. Thus, the alleged acts or omissions in this case were a legislative function.

*Maddox*, 267 Va. at 663. These considerations are very similar to those involved in determining whether an agent or municipality of the Commonwealth is engaged in a governmental function. Perhaps the two concepts are not equivalent, but they are at least correspondent.

With that not-so-succinct analysis as our backdrop, I now consider whether the specific acts or omissions alleged by Hope in this case fall within the legislative functions of the VDOT. The Commonwealth asserts that it "is clear that Plaintiff's claims relate to, and arise from, the initial design and construction of Route 11, and of the Commonwealth's failure to correct what Plaintiff contends was a dangerous situation." *Memorandum in Support*, at 5. For this reason, and based on the Supreme Court's analysis in *Maddox* (as well as a plethora of circuit court decisions), the Commonwealth argues that all of the allegations against it relate to VDOT's legislative functions, and, therefore, it is immune from liability. *Maddox* involved a child who was injured while riding his bicycle on a public sidewalk and, suing by his parents and next friends, asserted claims against the Commonwealth for negligent construction and maintenance of the sidewalk, as well as claims for creating and maintaining a nuisance due to the alleged dangerous

condition posed by the design of the sidewalk.[2] *Maddox*, 267 Va. at 659. The boy suffered the injury after the front tire of his bicycle caught on the inside edge of the sidewalk, causing him to lose control of his bicycle. *Id.* at 660. He was propelled over a "sharp and sudden drop off from the sidewalk into the adjoining yard," where he landed and sustained injuries. *Id.* Maddox appealed the trial court's granting the Commonwealth's plea of sovereign immunity and dismissing his Complaint.

The Court rejected Maddox's arguments and upheld the trial court's dismissal of the Complaint. Specifically, the Court disagreed with Maddox that the term "legislative function" cannot encompass acts or omissions that create and maintain a nuisance. *Id.* at 662. The Court also rejected the assertion that the rationale of *Taylor v. City of Charlottesville*, 240 Va. 367 (1990), in which the Court held that sovereign immunity did not bar a nuisance claim against a municipality, defeated the Commonwealth's claim of sovereign immunity. *Id.*

It is worth noting a couple of potential limitations to the applicability of the *Maddox* decision to the present case. First, the plaintiff's assignment of error was confined to the issue of whether the Commonwealth was immune from the plaintiff's *nuisance* claims; the Court was not asked (and therefore it declined to decide) whether the trial court had properly sustained the Commonwealth's plea of sovereign immunity with respect to the plaintiff's claims for negligence. *Id.* at 568, n. 1. However, even so constrained, the Court's rationale is not confined only to nuisance claims. The Court carefully noted that, irrespective of the plaintiff's theory of tort liability, the issue is "whether the alleged acts or omissions by an agency of the Commonwealth . . . fall within the 'legislative function' exception to the Commonwealth's waiver of immunity." *Id.* at 662–63. Thus, bringing a claim under a nuisance theory, as opposed to, for instance, a theory of negligence, does not "strip away the Commonwealth's immunity," because under either theory "the pertinent inquiry is whether the alleged acts or omissions arose out of the exercise of a legislative function by an agency of the Commonwealth." *Id.* at 665.

Second, having confined the inquiry to whether the alleged acts or omissions arose out the exercise of a legislative function, the Court in *Maddox* considered only the acts or omissions the plaintiff had alleged.

---

[2]   The analysis in Maddox is analogous because, as the Court noted in that case, a sidewalk is, "by definition, part of a street." Maddox, 267 Va. at 662. Therefore, the principles governing immunity from liability in regard to designing, constructing, and maintaining a sidewalk are applicable also to the question of immunity in designing, constructing, and maintaining a road. See also Messick v. Barham, 194 Va. 382, 387 (1952) ("It is generally accepted that the word 'street' is all inclusive and means all that portion of a highway set apart and designated for such use, that is, embraces both that portion of the highway set apart for vehicular traffic and that part set aside for pedestrians."); McCrowell v. City of Bristol, 89 Va. 652, 662 (1893) ("It is true that a sidewalk along a public street is part of the street.").

Specifically, Maddox alleged that the Commonwealth had failed to construct a retaining wall along the edge of the sidewalk and/or to backfill the adjoining yard. *Id.* at 663. Maddox did not allege, however, that the sidewalk's construction had deviated from its design or that the sidewalk had fallen into a state of disrepair. *Id.* While *Maddox* provides some helpful principles, it does not precisely or fully address the issues in the present case. Here, Hope asks for damages for the negligent design, construction, and maintenance of a road, whereas *Maddox* arguably addressed only design. For reasons that I will clarify below, I reject the Commonwealth's characterization of Hope's claims in this case as arising from the initial design and construction of Route 11. Therefore, even if *Maddox* stands firmly for the principle that the design of a public road is a "legislative function," it does not entirely reach the question of whether VDOT's acts and omissions in this case, which arguably encompass conduct other than the mere design of a road, fall within VDOT's "legislative functions."

Hope has alleged that the Commonwealth was negligent, was grossly negligent, and created and maintained a nuisance by the following acts and omissions:

a. Designed the portion of Route 11 on which plaintiff's decedent traveled such that her vehicle was pulled off the right side of the roadway onto the shoulder;

b. Painted the roadway lines to lead northbound vehicles off the road and onto the shoulder;

c. Constructed the roadway and shoulder with a drop off of the paved road of over nine inches;

d. Paved the roadway with a drop off of the paved road over nine inches;

e. Failed properly to supervise its agents and employees in the manner in which they carried out their duties, in particular by failing to design, construct, pave and maintain the roadway properly and allowed a roadway drop off of over nine inches;

f. Failed to warn the public, in particular vehicles traveling on Route 11 North, twenty feet south of Route 871 in Augusta County, Virginia, of the dangerous and hazardous condition of the roadway, and in particular the nine inch drop off at that location;

g. Acted otherwise negligently and recklessly as shall be determined through utilization of the Virginia rules of discovery; and

h. Acted in a manner without due regard for the rights, safeties, and position of the plaintiff at the point aforesaid.

*Complaint,* ¶ 14. The first claim expressly relates to the design of the roadway, and, under *Maddox,* the Commonwealth is immune from liability in the conduct of this function. The allegation in paragraph 14(f), failure to

warn, is also barred by sovereign immunity. As the Supreme Court noted in *Maddox,* "determining the need for such devices as '[t]raffic lights, blinking lights, warning signals, roadway markings, railings, barriers, guardrails, [and] curbings' and 'the decision to install or not install them calls for the exercise of discretion'." *Maddox,* 267 Va. at 663 (quoting *Freeman,* 221 Va. at 60). These decisions require "the agency to determine whether public funds should be expended to install those particular safety features," *id.,* and therefore are legislative functions of VDOT which are exempt from the Act's waiver of immunity. The Court sustains the Commonwealth's Plea with respect to the allegations of negligent design and failure to warn, as expressed in paragraphs 14(a) and 14(f) of the Complaint, and those claims are dismissed with prejudice.

Because the Court finds that Hope's claim of failure to warn is barred by the Act as a legislative function of the VDOT, the Court need not consider the Commonwealth's argument that this allegation is barred because it was not included in Hope's Notice of Claim to the Commonwealth, as required by the Act.

The Court's resolution of Hope's other claims is more problematic. The allegations of paragraphs 14(c)–(e) arguably relate to the construction of the roadway, and *Maddox* suggests that road construction is a legislative function of VDOT. *See id.,* at 662 ("The General Assembly has delegated to the Commonwealth Department of Transportation authority over the supervision, management, construction, improvement, and maintenance of public highways and roads."). But this general statement of legislative delegation does not consider the nuance of the word "construction." Delegating to VDOT authority over the construction of roads suggests that VDOT has authority both to determine *whether* to construct a road and also authority over the *actual* construction of that road. That is, deciding whether to build a road and determining the manner in which it will be built are different functions from that of building it, of actually putting shovels in the dirt. The former are discretionary and legislative in nature, while the latter arguably is not.

Although the Court did not directly consider the nuance of the words "construction" and "maintenance" in *Maddox,*[3] it did hint at it by observing that the plaintiff in that case "did not allege that the sidewalk's construction had deviated from the Project's plans or that the sidewalk had fallen into a state of disrepair." *Id.* at 663. The mere fact that the Court mentioned these nonexistent allegations implies that they had some impact on the Court's

---

[3] I note also that the word maintenance is similarly susceptible to such nuance, that is, the decision whether to repair a pothole, for instance, is aptly characterized as a legislative function, as it involves discretion and the allocation of public funds. However, after the agency determines that the pothole is to be repaired and establishes the manner in which it is to be repaired, the subsequent act of repairing the hole, of actually filling it and grading it, is arguably not a legislative function.

immunity analysis (else, why would the Court make note of something that was not alleged if it was not relevant?).[4] Of course, the Court (rightly) did not consider such a hypothetical question. But that question is before me (even if not squarely before me) and is not hypothetical.

In light of this "hint" from *Maddox*, and in light of the underlying rationale in the *Maddox* decision's "legislative function" analysis, as discussed above, I find that the physical act of constructing or maintaining a road, as distinct from decisions such as whether and in what manner to construct or maintain it, does not fall within the legislative functions of VDOT. When VDOT considers the construction of a road, it certainly acts in a legislative capacity. It is also exercising discretionary and legislative functions when it designs the road and determines the materials and method of construction to employ. But beyond these legislative functions, all that remains is for VDOT physically to execute its legislative decisions, and such purely physical acts or omissions do not fall within the agency's legislative functions. For example, if the physical execution deviates from the agency's plans or designs (which were legislatively determined) in a negligent manner, then the deviation may subject the Commonwealth to liability under the Act. If the employee painting the lines on a road operates the paint-truck while he is intoxicated, causing the lines to be crooked and leading a driver into Middle River, does his negligence fall under VDOT's "legislative functions"? Or, if VDOT workers install a stop sign using duct-tape, rather than employing the prescribed method, with the result that the sign falls and traffic is uncontrolled where it ought to be controlled, does this negligence fall within VDOT's "legislative functions"? The logical extension of *Maddox* (and common sense) suggests not.

Furthermore, this distinction is necessary to retain some meaning for the term "legislative function" as it is used in the Act. The Court in *Maddox* noted, "[t]he General Assembly has delegated to the Commonwealth Department of Transportation authority over the supervision, management, construction, improvement, and maintenance of public highways and roads." *Id.* (citing Va. Code §§ 33.1-12, 33.1-25, 33.1-49, and 33.1–69). This pronouncement implies that legislative functions are those that have their origins and authority grounded in statute. However, every legitimate agency action must be authorized by the Code (which is the authority by which the agency exists), and therefore exclusive reliance on statutory mandate to define the term "legislative function" effectively renders all

---

[4] Notably, the Court's mention of these nonexistent allegations also came within a paragraph in which the Court had expressly identified the issue in the case: "whether the alleged acts or omissions by an agency of the Commonwealth in regard to the sidewalk fall within the 'legislative function' exception to the Commonwealth's waiver of immunity." Maddox, 267 Va. at 662. This supports the inference that the observation may be significant to the determination of whether the conduct in question fell within the legislative function exception.

agency action legislative. But the Act, by specifically confining its limitation to "legislative" functions, implies that an agency performs some functions that are not "legislative." A contrary interpretation would render the statutory exception superfluous, because the Act would have no need specifically to identify "legislative" functions as distinct from its other functions. Sound logic and statutory construction require that we assume some of an agency's functions under the Act are "non-legislative." *See Jackson v. Commonwealth*, 274 Va. 630, 634 (2007) ("[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.") (quoting *Robinson v. Commonwealth*, 274 Va. 45, 51–52 (2007). Therefore, "legislative functions," as it is used in the Act, must mean something more than merely those functions delegated to an agency by statute, because *every* legitimate agency action is ultimately authorized by some enabling statute. To define "legislative functions," then, we must look more deeply than the surface of the Code. The distinction I have drawn (between VDOT's discretion to undertake projects and its planning of those projects, on one hand, and its physical execution of those plans, on the other) is a way of deriving meaning from the Act's implication that an agency performs non-legislative functions. And, as noted above, this distinction is consistent with the rationale of *Maddox*, in which the Court relied on factors such as whether the agency action required the exercise of discretion and, specifically, whether it required agency discretion in the allocation of public funds. *Id.*, at 663.

Looking again at paragraphs 14(c)–(e) of Hope's Complaint, I cannot say that these claims are based on acts or omissions that *necessarily* fall within VDOT's legislative functions. Although Hope has not expressly alleged that his claims are based on VDOT's deviation from the plans or designs for this portion of Route 11, he has alleged that the "shoulder drop-off was in violation of safety regulations. . . ." Complaint, ¶ 5. Hope does not identify any specific regulations violated by the drop off. I may reasonably infer from this allegation, which I must assume to be true on demurrer, and which for the purposes of a plea in bar I find to be true in the absence of any contrary claim or evidence brought by the Commonwealth, that Hope claims the construction of this portion of Route 11 did not conform to the design or specifications determined by VDOT, because it would be unreasonable to assume that VDOT designed this portion of the road in such a way so that it violated safety standards or regulations.

The party advancing a plea of sovereign immunity bears the burden of proving the facts necessary to support its plea. *Gambrell v. City of Norfolk*, 267 Va. 353, 357 (2004). Because the Commonwealth has advanced no facts to refute the inference, reasonably drawn from Hope's Complaint, that the alleged unsafe condition on this portion of Route 11 resulted from VDOT's deviation from its own plan or design for the construction of that road and has presented no facts to indicate that Hope's claims relate exclusively

to the design or planning of this portion of road, the Court overrules the Demurrer and the Plea of Sovereign Immunity is denied for the claims of negligence based on the acts or omissions in paragraphs 14(c)–(e) of the Complaint.

The Court also finds that Hope's claim in paragraph 14(b), that the roadway lines were painted in a such as way as to lead vehicles off of the road and over the shoulder drop off, also is not necessarily barred by sovereign immunity. Although the *Maddox* decision indicates that "determining the need for such devices as . . . roadway markings . . . and the decision to install or not install them" are legislative functions, *Maddox*, 267 Va. at 663, this declaration does not indicate whether the physical act of painting roadway lines (as distinct from deciding whether and how to paint them) is a legislative function. However, the Complaint does not allege that the lines were negligently painted in contravention to the design or plan for the roadway. Thus, the Complaint fails to allege facts sufficient to determine whether the Commonwealth can be held liable for the alleged negligence. For this reason, the Court sustains the Commonwealth's demurrer to this allegation without prejudice.

Hope's claims in paragraphs 14(g) and (h) are too general to support a cause of action, and the Demurrer is also sustained without prejudice with respect to those claims.

As to Hope's claim for "interest on any judgment from December 28, 2008," the Commonwealth correctly argues that such pre-judgment interest is not permitted under the Act. *See* Va. Code Ann. § 8.01-195.3 (2011) ("[N] either the Commonwealth nor any transportation district shall be liable for interest prior to judgment or for punitive damages."). Therefore, Hope's prayer for pre-judgment interest is dismissed with prejudice.

Finally, the Court must address whether the above analysis applies to Hope's claims irrespective of the tort theory under which he brings them. The Commonwealth incorrectly asserts that the Act does not limit its immunity against nuisance claims. *Memorandum in Support*, at 11. Indeed, later in its memorandum, in trying to defeat Hope's assertion that a gross negligence claim rises above sovereign immunity protections, the Commonwealth asserts that the degree of negligence and the tort theory are irrelevant: "Whether the conduct amounts to simple negligence, gross negligence, intentional conduct, or nuisance, if it falls within an exception to the Act, sovereign immunity applies." *Memorandum in Support*, at 13. This latter statement is an accurate recitation of the Supreme Court's unequivocal view in *Maddox*. *See Maddox*, 267 Va. at 665 (noting that, under either a negligence theory or a nuisance theory, "the pertinent inquiry is whether the alleged acts or omissions arose out of the exercise of a legislative function by an agency of the Commonwealth"). Accordingly, the tort theory relied upon by Hope is not relevant to the immunity analysis, and the Commonwealth is not absolutely immune from nuisance claims.

*Conclusion*

As this opinion letter reveals, the doctrine of sovereign immunity in the Commonwealth is neither clearly delineated nor consistently applied. Perhaps this is because the doctrine often turns on distinctions that are "more readily stated in theory rather than applied in actual practice." *City of Chesapeake v. Cunningham*, 268 Va. 624, 635 (2004). All the same, I find merit in Justice Cochran's observation that the "tendency . . . to tiptoe around the fringes of sovereign immunity not only produces highly attenuated reasoning but leads to increasing uncertainty and confusion in the trial courts." *Bowers v. Commonwealth, Dep't of Highways & Transp.*, 225 Va. 245, 255 (1983) (Cochran, J., dissenting). So, to the extent that I have misapplied or misinterpreted the principles of sovereign immunity in this case, I am confident that the issue will be corrected and clarified by the Supreme Court of Virginia.

The Court sustains Commonwealth's Demurrer and Plea of Sovereign Immunity with respect to Hope's claims of negligence, gross negligence, and nuisance based on the acts or omissions in paragraphs 14(a) and (f) of the Complaint and dismisses those claims with prejudice. The Court also sustains the Demurrer and Plea of Sovereign Immunity with respect to Hope's prayer for pre-judgment interest and dismisses that claim with prejudice, as well.

The Complaint fails to allege sufficient facts to state a cause of action in negligence, gross negligence, and nuisance for the acts or omissions alleged in paragraph 14(b), (g), and (h), and the Court sustains the Commonwealth's Demurrer without prejudice with respect to those allegations. The Court grants leave to amend these claims within twenty-one days of the ensuing order.

With respect to Hope's allegations of negligence, gross negligence, and nuisance based on the acts or omissions in paragraphs 14(c)–(e), however, I find that the Commonwealth has failed to advance sufficient facts to show that the alleged acts or omissions fall within VDOT's legislative functions. Therefore, the Court overrules the Demurrer and the Plea of Sovereign Immunity with respect to the acts or omissions alleged in paragraphs 14(c)–(e).