DONALD E. TAYLOR, ET AL., ETC.

V.

CITY OF CHARLOTTESVILLE, ET AL.

Record No. 900345

November 9, 1990

Present: All the Justices

*Thomas E. Albro (Bruce C. Phillips; Tremblay & Smith*, on briefs), for appellants.

*Bruce D. Rasmussen (Kevin W. Ryan; Elizabeth P. Coughter; W. Clyde Gouldman, II, City Attorney; Michie, Hamlett, Lowry, Rasmussen & Tweel*, on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

Donald E. Taylor and Janet E. Taylor, administrators of the estate of Andrew W. Taylor, deceased, sued the City of Charlottesville; Cole Hendrix, the City Manager; Judith Mueller, the Director of Public Works; and James W. Marshall, the City Traffic Engineer (collectively, the City), to recover damages for the alleged wrongful death of Andrew W. Taylor. The Taylors sought recovery on the basis of (1) negligence (both simple and gross), (2) abuse of discretion in performing a governmental function, and (3) public nuisance.

The trial court sustained the City's demurrer and plea of governmental immunity and dismissed the Taylors' action. The Taylors appeal.

## I

### Facts

The facts are taken from the Taylors' motion for judgment, as amended. In the early 1970's, the City constructed Michie Drive to facilitate the development of an apartment complex in the City of Charlottesville. As constructed, the street ends just north of a 90-degree, left-hand turn leading into the complex.

The City placed no signs, guardrails, lights, reflectors, painted lines, sidewalks, or curbs to mark the end of the road. No street lights were installed in the area. At night, the street dead-ends in the dark, at a narrow and unfenced strip of land below the grade of Michie Drive. This 37-foot strip of land is all that stands between the end of Michie Drive and the edge of a steep precipice descending into Meadow Creek. The creek is part of the City's storm water drainage system.

The site plan reflected the obviously defective and dangerous condition of the street as constructed. Despite the obvious defects, the City approved the plan.

During the ensuing years, the City received complaints about the dangerous condition existing at the terminus of the street. The complaints included, among other things, the need for better lighting. The City, however, failed to take any measures to remedy the dangerous condition.

In 1981, the City was notified that Meadow Creek was flooding during heavy rainfalls and was made aware of the danger caused by the flooding. Additionally, in 1985, an engineering firm's final report on a drainage study of the creek confirmed that the creek

lacked adequate storm drainage capacity to carry off water from heavy rains. In the years that followed, the City failed to clean out the channel of the creek, to install other drains, or to take any other maintenance measures to decrease the danger of flooding.

On the evening of September 12, 1987, Andrew W. Taylor was a passenger in an automobile operated by Stephen A. Wrenn. Wrenn drove the vehicle north on Michie Drive at a lawful speed. Due to rain and the darkness of the evening, Wrenn did not see the end of the street. Consequently, Wrenn failed to stop at the street's northern terminus. The car crossed the 37-foot strip of land and plunged into Meadow Creek.

As a result of heavy rainfall, Meadow Creek was in a flood-like condition. When the automobile entered the creek, it overturned and was swept approximately 70 feet downstream by the current of rushing water. Andrew Taylor died as a result of injuries sustained in the accident.

## II

### The Negligence Counts

■ A municipal corporation is clothed with a two-fold function—one governmental, the other private or proprietary. In the performance of governmental functions, a municipality is immune from liability for its failure to exercise those functions and for its negligence in exercising them. In the performance of proprietary functions, however, a municipality is not immune from liability for its negligence. *Fenon* v. *City of Norfolk*, 203 Va. 551, 555, 125 S.E.2d 808, 811 (1962); *Hoggard* v. *Richmond*, 172 Va. 145, 147-48, 200 S.E. 610, 611 (1939).

In Counts I, IV, VI, and VII of the motion for judgment, the Taylors allege that the City was negligent in failing to use reasonable care to install lights, a barricade, and other safety devices, and in designing and constructing Michie Drive.[1] These, essentially, were the negligent acts and omissions alleged in *Freeman* v. *City of Norfolk*, 221 Va. 57, 266 S.E.2d 885 (1980).

In *Freeman*, we held that the City was immune from liability because the alleged negligence concerned matters relating to traf-

---

[1] The Taylors also claim that the City's failure in this regard constituted gross negligence. The trial court ruled that the motion for judgment "does not set forth factual allegations which give rise to their claims of gross negligence." We agree with the trial court's ruling on the gross negligence issue.

fic regulation. Such matters, unlike street maintenance when a city acts in a proprietary capacity, constitute "the exercise of a discretionary governmental function." *Id.* at 59, 266 S.E.2d at 886; *accord Transportation, Inc.* v. *Falls Church*, 219 Va. 1004, 1005, 254 S.E.2d 62, 63 (1979).

■ Consistent with our holding in *Freeman*, we conclude that the City is immune from liability for the claims of negligence asserted in Counts I, IV, VI, and VII of the motion for judgment. Accordingly, we will affirm the trial court's judgment that sustained the City's demurrer to those counts.

## III

### *The Discretion Count*

■ In Count V of the motion for judgment, the Taylors allege that the City abused its discretion in approving the site plan of Michie Drive. The Taylors contend that the City is not immune from liability for such abuse of discretion. We do not agree. A municipal corporation, in selecting and adopting a plan for the construction of a public street, acts in a discretionary, governmental capacity and is immune from liability for injuries resulting from its errors in judgment made in that capacity. *City of Norfolk* v. *Hall*, 175 Va. 545, 551, 9 S.E.2d 356, 359 (1940); *see also Freeman*, 221 Va. at 59, 266 S.E.2d at 886.

The Taylors also contend that the City is not immune from liability for its failure to exercise its discretion in designing and constructing Michie Drive. We reject this contention. A municipal corporation is immune from liability for failure to exercise a governmental function. *Fenon*, 203 Va. at 555, 125 S.E.2d at 811; *Hoggard*, 172 Va. at 147, 200 S.E. at 611; *accord Freeman*, 221 Va. at 60, 266 S.E.2d at 886; *Hall*, 175 Va. at 551, 9 S.E.2d at 359.

■ We conclude, therefore, that the City is immune from liability for the claims of abuse of discretion and of failure to exercise discretion asserted in Count V of the motion for judgment. Accordingly, we will affirm the trial court's judgment that sustained the City's demurrer to that count.

## IV

### The Nuisance Count

In Count II of the motion for judgment, the Taylors allege that the City negligently created and maintained a dangerous condition. The Taylors contend that the dangerous condition constitutes a public nuisance and that, therefore, the immunity doctrine does not apply.[2] The City first contends that the alleged dangerous condition is not a public nuisance because the condition is neither located within a public place nor adjacent thereto.

A public nuisance is a condition that is a danger to the public. *White* v. *Town of Culpeper*, 172 Va. 630, 636, 1 S.E.2d 269, 272 (1939). The essential characteristic of a public nuisance as it relates to highways is that the condition imperils the safety of a public highway and is dangerous and hazardous in itself. *Price* v. *Travis*, 149 Va. 536, 547, 140 S.E. 644, 647 (1927). The dangerous condition need not exist within the street itself. *Burson* v. *City of Bristol*, 176 Va. 53, 64, 10 S.E.2d 541, 545 (1940). As we said in *Burson*:

[I]t is said here that the hazardous situation arose not from any condition in the streets themselves, but from a danger outside the streets. We do not think the rule is so limited as to exclude all danger arising beyond the limits of a street. The purpose of the rule is to provide safety to persons lawfully using the streets. The rule, indeed, would be but half discharged were it not held to make the municipality liable for dangers known to exist outside the street's limit, but so near thereto as to endanger public travel thereon. It is as much the duty of a city to take steps to ward off and to prevent the known probability of injury to users of its streets as it is its duty to remove dangerous defects and obstructions within the streets themselves.

Injuries caused by defective instrumentalities immediately adjacent to a street may be as grievous as those which result from defects within the street itself. Weakened walls which overhang a street and dangerous unguarded ditches and excavations which may adjoin a street render the street no less

---

[2] No such allegation was made in *Freeman*.

perilous than obstructions or depressions negligently permitted within the street itself.

*Id.* at 64, 10 S.E.2d at 545. (Citations omitted.) A dangerous condition may be "adjacent" to a street without adjoining it. *See State Highway Commissioner* v. *Creative Displays*, 236 Va. 352, 355, 374 S.E.2d 30, 32 (1988).

■ In the present case, the alleged condition at the terminus of Michie Drive is "dangerous and hazardous in itself " and imperils the safety of the City's street. Furthermore, the dangerous condition is located adjacent to the street. Thus, we conclude that the motion for judgment effectively alleges a public nuisance.

The City next asserts that, because it is immune from liability for the alleged negligent acts, it likewise is immune from liability for the same negligence associated with the alleged nuisance. We do not agree.

■ We long have recognized that a municipal corporation may not be immune from liability for creating or maintaining a nuisance. *City of Portsmouth* v. *Weiss*, 145 Va. 94, 109, 133 S.E. 781, 786 (1926); *see Chalkley* v. *City of Richmond*, 88 Va. 402, 14 S.E. 339 (1891). This also is the majority view nationwide. *See generally* Annotation, *Rule of municipal immunity from liability for acts in performance of governmental functions as applicable to personal injury or death as result of a nuisance*, 56 A.L.R.2d 1415 (1957).

■ We stated a more precise rule in *Virginia Beach* v. *Steel Fishing Pier*, 212 Va. 425, 184 S.E.2d 749 (1971). In that case, we said that if a municipal corporation creates or maintains a nuisance, it is not protected by the immunity doctrine unless (1) the condition claimed to be a nuisance is authorized by law, *and* (2) the act creating or maintaining the nuisance is performed without negligence. *Id.* at 427, 184 S.E.2d at 750-51.

In sustaining the City's demurrer to the Taylors' nuisance count, the trial court relied upon *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960). The City contends that *Kellam* requires an affirmance of the trial court's ruling. ·

■ In *Kellam*, the plaintiff was injured when she slipped and fell in an aisle of a school auditorium. She sued the school board on two counts, *viz*, (1) that the board was negligent in maintaining the aisle in an unsafe condition, and (2) that the board maintained a nuisance. *Id.* at 253, 117 S.E.2d at 97.

We affirmed the trial court's judgment sustaining the board's demurrer to each count. With respect to the negligence count, we held that the board had acted in a governmental capacity and, therefore, was immune from liability. *Id.* at 257-58, 117 S.E.2d at 99-100. We likewise held that governmental immunity applied to the nuisance claim. *Id.* at 258, 117 S.E.2d at 100. In doing so, we emphasized that school boards are agents or instrumentalities of the state and "partake of the state's sovereignty with respect to tort liability." *Id.* at 258-59, 117 S.E.2d at 100. Further, we emphasized that school boards, being state agencies, differed from true municipal corporations. *Id.* at 258, 117 S.E.2d at 100.

> Certain kinds of governmental units are sometimes considered as quasi corporations, rather than true municipal corporations. In several cases involving school districts and counties so considered, it has been held or recognized that no liability can be imposed on such corporations for personal injuries, even though resulting from nuisances, on the ground that they exercise functions merely as agents of the state, this position having been taken even in some jurisdictions recognizing the applicability of the nuisance exception to true municipal corporations.

*Id.* (quoting 56 A.L.R.2d 1415, 1424 (1957)).

The trial court's reliance upon *Kellam* was misplaced. *Kellam* involved a state agency, not a true municipal corporation. *Steel Fishing Pier*, on the other hand, expressly states the rule applicable to a municipal corporation.

We hold, therefore, that the Taylors' nuisance claim is not barred by governmental immunity. Consequently, the trial court erred in sustaining the City's demurrer to the nuisance count.

## V

### Conclusion

In sum, we will reverse the trial court's judgment in sustaining the City's demurrer to the nuisance count in the Taylors' motion for judgment and remand the case for further proceedings consistent with the views expressed herein. We will affirm the judgment

with respect to all other counts in the motion for judgment to which error is assigned.

*Affirmed in part,*
*reversed in part,*
*and remanded.*