## CIRCUIT COURT OF AUGUSTA COUNTY

Mark Hope,
Administrator
of the Estate of
Francis W. Hildebrand

v.

Commonwealth of Virginia *et al.*

January 23, 2015

Case No. CL10000916-00

BY JUDGE VICTOR V. LUDWIG

Before the Court is the Demurrer, which the defendants have interposed to the plaintiff's amended complaint (the AC), not the special plea of sovereign immunity which the defendants filed on June 9, 2014, (which has not been briefed or argued). I realize, of course, that a demurrer and special plea were also raised to the initial complaint, and the Court ruled on those matters by letter of April 7, 2011. To the extent that the issues are the same and the plea relevant to them is the same (and I offer no opinion as to that in general, because I have not carefully compared the initial pleadings to the ones which you have later filed), I hope not to re-plow that ground. Whatever the result of that analysis may be, given that the issue of sovereign immunity is not before me, I must analyze the substantive issues raised by the Demurrer as though sovereign immunity were not a part of the proceeding, with one exception, and that is the revisited issue of the Commonwealth's failure to warn, which the Court dismissed with prejudice (and which is somewhat casually addressed in footnote 2 of the defendants'

Memorandum of Law in Support of Demurrer to Amended Complaint [the MSD]).

## I. *Facts*

The facts alleged in the AC are largely consistent with those in the initial complaint (which I summarized in the letter of April 7, 2011), the most significant differences being (a) that the plaintiff, Mark Hope, administrator of the Estate of Francis W. Hildebrand (Hildebrand), has added an additional defendant, James Greis, (b) that Hope has omitted certain allegations of negligence (*e.g.,* negligent design), (c) that Hope has made reference to specific publications that he believes to be relevant to this proceeding, and (d) that Hope has made more specific allegations regarding the painting of lines which separate the lanes on Route 11 at the scene of the accident.

## II. *Issue Already Addressed:* *Failure To Warn by the Commonwealth*

In my earlier opinion, I dismissed with prejudice the cause of action predicated on the Commonwealth's failure to warn, and I see no reason now to revisit that issue as it reappears in the AC as a basis for asserting that the Commonwealth is liable. As I said in that letter:

> The allegation in paragraph 14(f), failure to warn, is also barred by sovereign immunity. As the Supreme Court noted in [*Maddox v. Commonwealth,* 267 Va. 657 (2004)], "determining the need for such devices as '[t]raffic lights, blinking lights, warning signals, roadway markings, railings, barriers, guardrails, [and] curbings' and 'the decision to install or not install them calls for the exercise of discretion.'" *Maddox,* 267 Va. at 663 (quoting *Freeman,* 221 Va. at 60). These decisions require "the agency to determine whether public funds should be expended to install those particular safety features," *id.,* and therefore are legislative functions of VDOT which are exempt from the Act's waiver of immunity. The Court sustains the Commonwealth's Plea with respect to the allegations of . . . failure to warn, as expressed in [paragraph] . . . 14(f) of the Complaint,[1] and . . . [that claim is] dismissed with prejudice.

*Hope v. Commonwealth,* 82 Va. Cir. 460, 469-70 (Augusta Cnty. 2011).

To be sure, in footnote 2 of his Memorandum of Law in Opposition to the Demurrer to Amended Complaint (the MOD), Hope suggests that he is now arguing a different theory of a failure to warn, and the new theory is

---

[1] The allegations regarding the Commonwealth's duty to warn now appear in AC paragraphs 23 and 27(e).

that the duty to warn arose after repair work had begun. The different theory (different only in chronology) does not yield a different result. Clearly, the duty to warn is predicated on knowledge by a defendant (actual or imputed) of the existence of a hazard, and the allegation (in both the complaint and the AC) is that the Commonwealth knew of the hazard. If there was no duty to warn when the Commonwealth first learned of the existence of the hazard, one did not arise simply because work commenced to repair it. The level of knowledge is not increased by the commencement of the repair, and, even if it were, the holding in *Maddox* (described in my earlier opinion) still applies. Despite Hope's assertion to the contrary, as a matter of law, the commencement of repair work does not convert the decision whether or not to warn from a legislative one to something else.

To restate it only to emphasize it, I affirm my earlier dismissal, with prejudice, of Hope's claim against the Commonwealth on the basis of negligent failure to warn.

### III. *The Demurrer*

A demurrer tests the legal sufficiency of a claim and asks whether the facts alleged, taken as true, are sufficient to support a cause of action. *See Glazebrook v. Board of Supervisors*, 266 Va. 550, 554 (2003). As noted above, "[a] demurrer admits the truth of all properly pleaded material facts," and "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Kellerman v. McDonough*, 278 Va. 478, 484 (2009). But the pleadings must set forth sufficient facts constituting a foundation in law for the judgment sought, not simply conclusions of law, *Kitchen v. City of Newport News*, 275 Va. 378, 385 (2008), and "a demurrer does not admit the correctness of the pleader's conclusions of law," *Dodge v. Randolph-Macon Woman's College*, 276 Va. 1, 5 (2008), except that "[a]n allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence." Va. Sup. Ct. R. 3:18(b). An inadequacy concerning a pleading of negligence can be addressed by a demand for a bill of particulars pursuant to Rule 3:7.

From the demurrant's perspective, however, "only grounds stated in the demurrer may serve as a basis for granting the demurrer." *Anthony v. Verizon Va., Inc.*, 288 Va. 20, 31 (2014).

It is in light of those principles that I will consider the defendants' Demurrer.

### A. *Paragraph 1 of the Demurrer*

This is a general demurrer attacking all of the counts in the AC on the basis that each count is grounded on "internal rules to establish the standard of care for negligence." To be sure, each of the counts does refer to internal

rules of the Commonwealth or its agency, and the defendants are correct that such rules cannot be the basis to establish the standard of care.

That restriction against using private rules to establish the standard of care in negligence cases and the bases for the conclusion were well articulated by the Supreme Court of Virginia in *Virginia Railway & Power Co. v. Godsey*, 117 Va. 167 (1915). Although the issue arose on an appeal of the admissibility of the rules of the company, not only did the Court find the rules to be inadmissible, but it also held:

> A person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Private rules may require of employees less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party. The company cannot introduce its rules to show that it has conformed thereto as a proof of its freedom from negligence, and it would be a harsh measure of justice to hold that a plaintiff should be permitted to exact of the company the standard of duty required by such rules. The plaintiff sues for the violation of duty imposed by law, not for the violation of special rules about which she knew nothing.

*Id.* at 168-69. Although the Court might have elected to limit the rule to private enterprise (and its reference to "private rules" could have given rise to that inference), it did not do so. In *Pullen v. Nickens*, 226 Va. 342 (1983), the Court specifically applied the same principle to guidelines promulgated by the Highway Department. In that case, the plaintiff attempted to use the regulations to establish the standard of care for an employee of the Highway Department who stopped his vehicle on the highway[1] during a repair operation, with the result that a motorist, who attempted to avoid a collision, caused another vehicle to have an accident. As in *Godsey*, the specific issue before the Court was whether the rules were admissible, and Justice Cochran, speaking for the Court, succinctly observed:

> Noting [in *Godsey*] that the rules were intended for the guidance of the company's employees, and that there was no evidence that the plaintiff was aware of them, we held that "a person cannot, by the adoption of private rules, fix the standard of his duty to others." [*Godsey*] at 168, 83 S.E. at 1073. The action, we pointed out, was for violation of duty

---

[1] Curiously, and noted by the Court, the defendant, who was an employee of the Highway Department, did not raise the issue of sovereign (or official) immunity, relying instead on an inapplicable statutory immunity.

> imposed by law rather than for violation of special rules of which the plaintiff was unaware. . . . We believe the rationale of *Godsey* is sound, and we reaffirm our holding in that case that private rules are inadmissible in evidence either for or against a litigant who is not a party to such rules.

*Id.* at 351 (citation omitted).

The Court did distinguish *Godsey* and *Pullen* in *Riverside Hospital, Inc. v. Johnson*, 272 Va. 518 (2006). That case, too, was directed to the admissibility of the evidence, but the Court found that the material at issue was neither policy nor procedures of the hospital (presumably, therefore, not covered by the rule), and, more importantly, the evidence was not admitted "to establish the standard of care." *Id.* at 529.

I recognize that Hope might argue that the holdings in *Godsey, Pullen,* and the observation in *Riverside* are directed only to the admissibility of internal rules and regulations, and therefore it would be untimely for the Court to rule on that issue at the demurrer stage. Although I might agree with that observation, the Demurrer is not a motion *in limine*. Rather, without raising the issue of admissibility (therefore without explicitly contesting the admissibility of evidence of the internal rules), the defendants state in the Demurrer that "all counts in the Amended Complaint against both defendants are defective because the Amended Complaint relies on internal rules to establish the standard of care for the claim of negligence." (DAC ¶ 1.) (Although I refer to the Demurrer, I will refer to specific cites in it by using the abbreviation DAC and the appropriate paragraph.) Because some of Hope's causes of action are based on a negligence theory of one flavor or another, he must establish a standard of care, and if the only basis for doing that is the internal rules (rather than a common law or statutory duty), the causes of action are subject to demurrer to the extent that they rely only on internal rules.

However, the allegations in the AC are broader than that. AC paragraph 11 alleges that the road "presented a hazardous condition and was in violation of [unspecified] safe roadway maintenance standards and construction [*sic*]." In addition to relying on manuals of the Virginia Department of Highways and Transportation (AC ¶ 13 and AC ¶ 15), the AC also refers to other specific guidelines (AC ¶ 14 and AC ¶ 16) and to unspecified guidelines and standards (AC ¶ 11, AC ¶ 20, AC ¶ 22, and AC ¶ 26).

Not addressed by the demurrer, and therefore not addressed in this opinion, is the admissibility of those non-internal regulations or guidelines.

In order to be sustained, the premise of DAC paragraph 1 would have to be that Hope relies only on "internal rules to establish the standard of care for the claim of negligence," but (a) it does not say so (it only says that Hope "impermissibly relies on internal rules"), and (b) it is not so. Although Hope does appear to impermissibly rely on internal rules of VDOT, his claims are not based solely on those rules.

Accordingly, the Court overrules DAC paragraph 1 of the Demurrer.

## B. *Paragraph 2 of the DAC: Individual Duty and Public Nuisance*

The first sentence of this part of the Demurrer states that Hope's "factual allegations . . . fail to state proper claims against the Defendants," but following Hope's example for fuzzy pleading, the Commonwealth departs from the plural and specifies only that Greis, "as an individual employee of the Commonwealth of Virginia, did not have a duty" to Hildebrand and asserts that "[a]ll counts alleged against [him] must be dismissed." Moreover, the MSD addresses only Greis' liability.

With respect to the issue of duty, Hope alleges that Greis was an employee of the Commonwealth and that he was "responsible for the consequences of errors directly impacting the safety of the traveling public . . . [and] to provide direct supervision to transportation team members and subordinate supervisors." (AC ¶ 3.) In that basic allegation, it appears that Hope is alleging both that Greis was negligent in the performance of a duty to the traveling public and that he was negligent in supervising others. It is unfortunate when a pleading conflates two causes of action into a single count, but that is what this one does.

Setting aside the issue of negligent supervision (which I address below), and focusing on what Hope alleges is Greis' duty of care to the travelling public, Hope alleges, *inter alia,* (a) that "it was [Greis'] duty to prioritize all work projects and repairs," (AC ¶ 9), (b) by implication, that Greis began the maintenance work "10 miles south of the accident scene on Route 11" but was interrupted by a "weather event," and "did not return to make repairs until after [Hildebrand's] wreck," (AC ¶ 10), (c) that he knew or should have known about the dangerous drop-off, (AC ¶ 11), and (d) that he "was responsible for ordering and scheduling repairs to the roadways and in fact had scheduled a repair job on December 15, 2008 to repair the low shoulder on Route 11 at a point twenty feet south of Route 871." (AC ¶ 12).

Greis maintains that he cannot be found liable for a failure to act, and in support of that proposition, he cites a number of Circuit Court opinions. Each of the Circuit Court cases on which Greis relies pre-dates *Chapman v. City of Virginia Beach,* 252 Va. 186 (1996), and, of course, unlike *Chapman,* none them is precedent for this Court. Moreover, none is persuasive, and they may simply be wrong.

In chronological order, *Schoonover's Administrator v. Russell,* 8 Va. Cir. 320 (Richmond City 1987), penned by Judge Markow, comes first. That case involved two employees of a health insurance carrier who advised the carrier to deny further mental health benefits to Schoonover, with the result that Schoonover subsequently committed suicide. Although I agree with the result, the decision that the advising employees owed no duty to the plaintiff was without precedential support, and the analysis for the conclusion rested on inapplicable analogies.

The Court in *Sloan v. Hickock*, 25 Va. Cir. 422 (Botetourt Cnty. 1991), relied solely on *Schoonover* for authority to hold that a VDOT employee, who abandoned his post, thus failing to direct Hickock away from a dangerous situation, owed no duty to Sloan. Curiously, the Court in *Sloan*, having cited a federal case, then proceeded to misapply its holding. The Court appeared to adopt the principle that, "'[t]hough a third party suffers a loss as a result of an agent failing to perform his duties to his principal, if that breach of duty to the principal is unaccompanied by any act or omission of the agent whereby a duty owing to him to the third party is breached, no cause of action accrues in favor of the latter against the agent.' *King v. Atlantic Coast Line*, 73 F.2d. 76, 77 (5th Cir. 1934)." *Id.* at 424. The Court then concluded that Hickock's omission (failing to be at his assigned post) was a duty he owed only to his employer, not to Sloan. Of course, it was that breach of duty (an omission by failing to be at his post) that was alleged to have caused Sloan's injury, so there was a "third party [who suffered] a loss as a result of an agent failing to perform his duties to his principal," and that "breach of duty to the principal" was accompanied by an "omission of the agent whereby a duty owing to him to the third party was breached."

*Pusey v. Riner*, 26 Va. Cir. 321 (Fairfax Cnty. 1992), involved an allegation that the plaintiff was injured as a result of "a residue of ice and snow [that] remained on the parking lot after inclement weather" due to the negligence of employees of the Fairfax County Public Schools. More specifically, the allegation was that the defendants "failed to perform a contract obligation which resulted in injury to Pusey." *Id.* at 324. The decision in *Pusey* is based on the decisions in *Schoonover* and *Sloan*.

Finally, in *Harris v. Morrison*, 32 Va. Cir. 298 (Richmond City 1993) (also written by Judge Markow and as brief as his decision in *Schoonover*), the Court concluded that:

> Virginia's Supreme Court has resolved the question of whether the employee owes a duty to the third person by denominating the employee's alleged act as one of misfeasance or nonfeasance. An employee may be liable for his own misfeasance (*i.e.,* performance of an affirmative act done improperly), but not for his own nonfeasance (*i.e.,* omission to do some act which ought to be performed).

*Id.* at 298-99. For the proposition that an employee may not be liable for misfeasance, the Court cited *Turner v. Carneal*, 156 Va. 889 (1931); however, that is not at all what the Supreme Court held in that case.

Turner alleged that she was injured when she fell through a trap door on premises which rental agents were showing her. After a jury verdict in her favor, the trial court set it aside, and the Supreme Court affirmed. To be sure, the Court said that "[t]he burden was upon the plaintiff to show a positive act of negligence on the part of the defendants, that is a breach of

duty they owed to the plaintiff." *Id.* at 893. However, in assessing whether there was a "positive act," the Court noted (a) that there was no evidence that the defendants were aware of the trap door or that it was open, (b) there was no evidence that they created the dangerous condition, (c) there was no evidence that they left the door open, and (d) there was evidence that their authority was limited to the collection of rent and making minor repairs. Certainly, there is a clear implication that, if the defendants had known of the condition of the door and left it unattended, the result would have been different. Hence, a conclusion that a failure to act cannot be the basis of negligence is not supported by *Turner.*

Hope cites *Habib v. Blanchard,* 25 Va. Cir. 451 (Fairfax Cnty. 1991), as authority for the proposition that Greis had a duty to Hildebrand. However, having noted that the defendants asserted "that they had no duty of care to" *Habib, id.* at 452, the Court then simply did not address whether there was a duty, electing instead to focus on the character of the duty. Indeed, it appears that, despite the fact that the defendants raised the issue, it was conceded that they had a duty, and it was put to the jury to decide, in the context of immunity, whether they were negligent or grossly negligent in meeting that duty.

Not cited by either party is Judge Klein's more recent and thoughtful analysis of the issue in *Milburn v. J. C. Penny Properties, Inc.,* 2007 Va. Cir. LEXIS 42 (Fairfax Cnty. 2007). In that case, Milburn sued, *inter alia,* the property manager, Taubman, who was charged with the responsibilities of maintaining the safety of the public thoroughfares through a mall, alleging that, Taubman had failed to maintain and inspect the sidewalk and parking lot at the shopping mall, and that he had failed to warn her of the resulting hazards. Taubman demurred, arguing that he had no duty to Milburn. Responding to Taubman's reliance on the language in *Turner,* Judge Klein distinguished it largely on the same basis as I have. For that and other reasons, the Court overruled Taubman's demurrer. Rather that reciting all of the bases for his decision, I encourage the parties to peruse it.

Curiously, neither Greis nor the plaintiff directed the Court to *Chapman v. City of Virginia Beach,* 252 Va. 186 (1996). In that case, a child who was playing on a broken section of a gate along the boardwalk was killed. The Chapmans sued the City alleging simple negligence, gross negligence, and nuisance. Having determined that the City could be held liable only for gross negligence, the trial court set aside a verdict for the Chapmans. The Supreme Court of Virginia reversed.

Clearly, in order for there to have been a finding of gross negligence, there had to have been a duty that the City breached. The City did raise, at the Supreme Court, the issue of whether it had a duty to keep the gate closed, but the Court noted (a) that the City had raised no such objection at the trial court and (b) (probably in *dictum)* that "the City need not foresee the precise nature of the injury, only that some injury might result." *Id.*

14

at 190, n. 2 (citations omitted). The duty was summarized by the Court's observation that Gregory, the supervisor in charge of maintaining the gate, had been thrice informed of the disrepair of the gate over a period of two months.

> Gregory had the authority to schedule and initiate repair of the gate but did not direct that any immediate action be taken in response to Creef's[1] reports. Gregory made a deliberate decision not to order that the gate be repaired or that the north section be secured at the time the reports were made because "most of the maintenance work that [the City does] on the boardwalk is done in the spring prior to the tourist season.". . .
>
> Despite repeated notices by its own employee, the City did not take any action. The decision not to take any action was deliberate. On this record, reasonable persons could differ upon whether the cumulative effect of these circumstances constitutes a form of recklessness . . . .

*Id.* at 191.

I understand that, with respect to the existence of a duty, *Chapman* could arguably be distinguished on two bases. First, it was a statute, not applicable to this case, that established the standard of gross negligence, but the standard establishing gross negligence does not change whether it is prescribed by statute or is at common law. Second, Gregory (unlike Greis) was not named as a party to the suit, but the City could not have been held liable unless Gregory, as its agent, had a duty to fulfill (or at least the City had a duty which it was required to meet through its agent).

On the basis of the foregoing, I overrule that part of the Demurrer asserting that, on the facts pleaded, Greis had no duty to Hildebrand.

With respect to the issue of public nuisance, Greis argues that Hope "may not prevail on any count alleged against [Greis] because all such counts require that [Hope] prove negligence on his part." (DAC ¶ 2.) The basis for that position is his assertion in MSD, page 11, that "the allegations of public nuisance require a finding of negligence," and he suggests that that assertion finds support in *Maddox* and *Taylor v. City of Charlottesville,* 240 Va. 367 (1900). It does not.

> We stated a more precise rule in *Virginia Beach v. Steel Fishing Pier,* 212 Va. 425, 184 S.E.2d 749 (1971). In that case, we said that if a municipal corporation creates or maintains a

---

[1] Creef was another employee of the City.

nuisance,[1] it is not protected by the immunity doctrine unless (1) the condition claimed to be a nuisance is authorized by law, and (2) the act creating or maintaining the nuisance is performed without negligence. *Id.* at 427, 184 S.E.2d at 750-51.

*Taylor*, 240 Va. at 374. Greis' reliance on *Taylor* is misplaced because the conjunction requires both components to establish the immunity shield. Because both components (*i.e.*, the condition must be authorized by law *and* not a consequence of negligence) are necessary, the assertion of immunity would fail even without evidence of negligence if the condition claimed to be a nuisance is not authorized by law. Speaking more directly, the Court in *Chapman* held:

> Contrary to the trial court's conclusion that the reliance on negligent acts defeated the nuisance count, *we conclude that a finding of negligence is one of the two alternative prerequisites required to impose liability on a city in a nuisance cause* of action. Cities can be held liable for damages resulting from a nuisance only if the condition claimed to be a nuisance was not authorized by law or the act creating or maintaining the nuisance was negligently performed. *Taylor*, 240 Va. at 373, 397 S.E.2d at 836; *City of Virginia Beach v. Virginia Beach Steel Fishing Pier, Inc.*, 212 Va. 425, 427, 184 S.E.2d 749, 750-51 (1971).

*Id.* at 192 (emphasis added). I understand (or at least I think I understand) the distinction between the immunity with which the sovereign Commonwealth clothes itself and the less impervious immunity that a city enjoys or that an agent enjoys, but the question of immunity is a different issue. Focusing solely on the liability aspect, absent considerations of immunity, '[t]he essential characteristic of a public nuisance as it relates to highways is that the condition imperils the safety of a public highway and is dangerous and hazardous in itself. *Price v. Travis*, 149 Va. 536, 547, 140 S.E. 644, 647 (1927)." *Taylor*, 240 Va. at 374. Such a condition is a public nuisance if it is not authorized by law even if its existence is not the result of negligence. Because a claim for nuisance need not be grounded on negligence, an argument that negligence is a necessary component of a claim for public nuisance cannot support Greis' demurrer.

Not amplified, and not supported by any precedent or legal authority, is Greis's assertion that he cannot be held liable for a public nuisance because he "did not own or possess the alleged nuisance . . . ." (MSD, page 11.)

---

[1] "The essential characteristic of a public nuisance as it relates to highways is that the condition imperils the safety of a public highway and is dangerous and hazardous in itself. *Price v. Travis*, 149 Va. 536, 547, 140 S.E. 644, 647 (1927)." *Taylor*, 240 Va. at 372.

Of course, the public nuisance that Hope alleges to exist is not one that is susceptible of ownership or possession. To be sure, the Commonwealth owns the road, but it is not the road that is the nuisance. Rather, the nuisance of which Hope complains is better characterized as "a condition [which] imperils the safety of a public highway and is dangerous and hazardous in itself." It is not an object, owned by someone or some entity, which has been placed in or near the road or permitted to remain there; it is a condition, not a thing at all.

As I noted, "only grounds stated in the demurrer may serve as a basis for sustaining the demurrer," *Anthony v. Verizon Va., Inc., supra,* and Greis has not stated grounds on this issue to support his Demurrer.

## C. *Paragraph 3 of the DAC*

This part of the Demurrer simply states that the AC "fails to allege facts sufficient to establish gross negligence on the part of either Defendant."

Rule 3:18 provides that an "allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence." The Rule does not distinguish between ordinary and gross negligence, so the reasonable conclusion is that it applies to both. Generally consistent with the Rule, the Supreme Court of Virginia has addressed the sufficiency of an allegation of gross negligence at the demurrer stage, *e.g.*, in *Koffman v. Garnett,* 265 Va. 12 (2003), in which the Court observed: "Whether certain actions constitute gross negligence is generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ . . . ." *Id.* at 15.

The gloss that the Court has imposed on the Rule is that the trial court must make an initial determination whether "reasonable persons could disagree on this issue." *Id.* at 16. Although not decided on a demurrer, *Chapman,* is instructive as to the kind of evidence (and, therefore the factual allegations) that would support a claim of gross negligence. In *Chapman,* the Court addressed the issue on a motion to set aside a jury verdict (obviously after the evidence had been presented). The trial court had set aside the jury verdict finding gross negligence, but the Supreme Court reinstated it because reasonable persons could disagree. Notably, the summary of the evidence under consideration in *Chapman* is not dissimilar to the facts alleged by Hope.

> The accident occurred in an area constructed and maintained by the City as a recreational facility. The purpose of such an area is to attract visitors of all ages to come to and enjoy the facility, in this case, the beach and boardwalk. Under the City's own operating procedures, the gates were to be closed unless City employees were performing maintenance functions. Despite repeated notices by its own employee, the City did

not take any action. The decision not to take any action was deliberate. On this record, reasonable persons could differ upon whether the cumulative effect of these circumstances constitutes a form of recklessness or a total disregard of all precautions, an absence of diligence, or lack of even slight care.

*Id.* at 191.

In the case at bar, the accident occurred on a highway constructed and maintained by the Commonwealth. The Court can take judicial notice of the fact that one purpose of the highway is to provide the citizens of the Commonwealth (and others passing through) a safe and efficient means of travel. However unartfully he has done it, Hope has alleged, *inter alia,* (a) that Greis was "responsible for the consequences of errors directly impacting the safety of the traveling public" (AC ¶ 3), (b) that he had inspected the road on which the accident occurred and located "multiple places . . . that needed work maintenance . . . including the accident site described in the Complaint" (AC ¶ 8), (c) that "[i]t was his duty to prioritize all work projects and repairs" (AC ¶ 9), (d) that maintenance work began, was interrupted by weather, but that it did not recommence until after the Hildebrand's accident (AC ¶ 10), and (e) that the defendants knew or should have known that the condition of the road "presented a hazardous condition and was in violation of safe roadway maintenance standards and construction [*sic*]" (AC ¶ 11). So that none of the parties assume that I missed it, I note that Hope states in his MOD at p. 7 that Greis "was aware that Route 11 had been resurfaced by B&S Contracting and that the paved portion of the road was at least three inches narrower near the point of the nine-inch drop off than it was a short distance beyond. He was further aware that painted road lines forced traffic even closer to the nine-inch drop off." He did not, however, allege any of those facts in the AC, and one would not infer those details from the allegations that he did make. Those observations and allegations are certainly similar to the ones which survived scrutiny by the Supreme Court of Virginia in *Chapman.*

The defendants misconstrue the duty of the Court at the demurrer stage. Correctly citing *Frazier v. City of Norfolk,* 234 Va. 388 (1987), for a definition of gross negligence, they fail to note that the issue before the Supreme Court in that case was not whether a trial court should have sustained a demurrer, but whether the evidence, fully developed by the plaintiff at trial, could support a jury verdict finding gross negligence. Although a motion to strike the evidence on an issue at the conclusion of the plaintiff's case is similar to a demurrer, the two pleadings are different. At a motion to strike, the Court does not have to take allegations as true. Rather, it is "required to resolve any reasonable doubt as to the sufficiency of the evidence in favor of the plaintiff." *Costner v. Lackey,* 223 Va. 377, 381 (1982). At the close of plaintiff's case, a motion to strike could be granted because an element

alleged in pleading was not addressed or proven, or because essential evidence subject to cross examination was determined to be inherently unreliable. These examples demonstrate a qualitative difference in the considerations the Court must make when considering a motion to strike, but which are inappropriate in assessing a demurrer.

I acknowledge that I have some difficulty drawing the distinction between the facts in *Chapman* and the facts in *Frazier* to understand why the evidence in the former withstood an attack on a motion to set aside the verdict finding gross negligence and the evidence in the latter was found insufficient to survive a motion to strike the evidence of gross negligence. However, looking back to Rule 3:18, the instruction I take both from it and the very narrow line between *Chapman* and *Frazier* is that, on close calls (and this one is), the better course is to permit the jury to hear the evidence, perhaps revisit it on a motion to strike it, or perhaps let it go to the jury for resolution (as in *Frazier*) and subsequent reexamination, depending on the jury's verdict (as in *Chapman*). That is consistent with the general policy in the judiciary of the Commonwealth to permit litigants their day in court if there is a colorable claim to pursue. *See Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd. P'ship,* 253 Va. 93, 95 (1997); *Hunter v. Burroughs,* 123 Va. 113, 129 (1918).

Accordingly, I overrule the Demurrer on the issue of gross negligence.

## D. *Paragraph 4 of the DAC*

This part of the Demurrer attacks the claim of negligent supervision. Hope does not make it entirely clear who the inadequate supervisor is, the Commonwealth, or Greis, individually. For that matter, it is not entirely clear whether Hope is making a claim for negligent supervision because he has hopelessly (pardon the pun) muddied the water on the issue. In his MOD, the heading of his response to this part of the Demurrer is styled, in part: "To The Extent That Plaintiff Has Made an Independent Claim For Negligent Supervision . . . ." Given that ambivalent statement, I cannot tell (a) whether Hope is asserting that he has made a claim for negligent supervision, (b) whether he is conceding that he did not, or (c) whether he is leaving it to the Court to speculate on the matter.

Despite his own apparent lack of certainty as to what he has pleaded, Hope alleges, (a) in AC ¶ 9, that Greis was "in charge of a 15 man work crew that performed maintenance on the roads in Augusta County," (b) in AC ¶ 10, that Greis "pulled his crew off the job because of weather conditions,"[1] and (c) in in AC ¶ 27(f), that "Defendants . . . failed to properly supervise its employees in the manner in which they carried out their duties."

As the defendants have noted, the plural subject of the sentence (from which one would infer that both defendants were negligent) does not agree

---

[1] An action that, whatever else it might be, would not be inadequate supervision.

with the singular possessory (neuter) pronoun (from which one would infer that only the Commonwealth was negligent), leaving the Court at sea to determine which defendant Hope alleges to have negligently supervised employees, or whether he is alleging that both did. However, although I am reluctant to read the mind of a litigant, I will address the issue from all reasonable perspectives rather than transfer this Court's dilemma to the Supreme Court of Virginia on an appeal. I will assume (despite Hope's equivocation) that he has asserted a cause of action for negligent supervision, and assessment of the viability of the issue applies whether we are assuming that it is the Commonwealth that is alleged to have been the negligent supervisor and whether we are assuming that it is Greis who has been alleged to have been the negligent supervisor.

First, other than the broad statement that some party has failed properly to supervise employees, Hope makes no allegation as to what action or inaction might constitute that negligent supervision. However, as I noted above, Rule 3:18 provides that an "allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence."

Having said that, however, negligent supervision is not recognized as a cause of action under Virginia law. The seminal case cited for this proposition is *Chesapeake & Potomac Telephone Co. v. Dowdy*, 235 Va. 55 (1988). In that case, in the context of a harassment suit, the Supreme Court of Virginia held, "[t]here is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances . . . ." *Id.* at 61. I recognize that the final three words of that sentence might indicate a significant limitation on the holding, and, indeed, Hope attempts to limit the case to its facts. The plaintiff, Dowdy, was an employee of the company, and he was alleging that two fellow-employees (Dowdy's supervisors) had mismanaged him. On a superficial reading, one might conclude that Dowdy's assertion of negligent supervision was directed only to his immediate supervisors, but the language of the case confirms that the assertion ran also to the company, although it is not clear whether it was the company's supervision of Dowdy's supervisors or of Dowdy himself that was alleged to be inadequate. If the former, the case is controlling because, despite the fact that Dowdy was an employee of the company, his claim against the company was for negligent supervision of other employees. If the latter, one may understand why *Dowdy* has been subject of some controversy among the circuit courts. Either way, however, the decision and the principle as it applies to a contractual employer-employee relationship have never been revisited by the Supreme Court.

Hope cites *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206 (1988), as authority for the proposition that there "are no Supreme Court cases directly addressing an employer's liability to a third party for injuries from the negligent supervision of an employee." (MOD, p. 17.) In fact, the issue of negligent supervision was not before the Court in *Victory Tabernacle,*

and one cannot infer from the Court's comment that, had the issue been raised, it would have struck off in a different direction from *Dowdy* rather than simply deciding on the basis of its (then) very recent precedent.

Hope suggests that *Kellerman v. McDonough*, 278 Va. 478 (2009), charts a new course in the field and is precedent for the establishment of the tort of negligent supervision, but *Kellerman* addresses an entirely different issue. In that case, a parent entrusted her daughter, Jaimee, with a friend and instructed the friend's parents, the McDonoughs, not to permit Jaimee to be driven by any inexperienced drivers. Notwithstanding the assurances to the contrary, Paula McDonough (McDonough)[1] expressly permitted Jaimee to drive with a young man with a reputation for reckless driving. In a sadly predictable result, Jaimee was killed in an automobile accident, and her parents brought a wrongful death action.

On those facts, deciding the purely legal question of whether McDonough owed a duty of care under the circumstances, the Court held "that when a parent relinquishes the supervision and care of a child to an adult who agrees to supervise and care for that child, the supervising adult must discharge that duty with reasonable care." *Id.* at 487.

Of consequence is that the obligation undertaken by McDonough was to take precautions to act prudently to care for Jaimee; it was not a duty to take reasonable care to ensure that Jaimee performed some action expected of her or to supervise her in the performance of it. The purpose of the supervision was to protect Jaimee, not to protect others from her conduct or failure to act in some fashion. To analogize *Kellerman* to the case at bar would be to say that Greis had a duty to supervise his crew so that they did not get hurt, not that he had an obligation to supervise them so that they would not cause harm to others. The term "supervise" is susceptible of two meanings; it may mean to direct or oversee the performance of a person, or it may mean to watch over and care for the person. Hope uses the former definition to describe Greis' duty; the Court in *Kellerman* used the latter to describe McDonough's duty, with the result that the duties of Greis and the duties of McDonough have virtually no relationship to each other.

During oral argument, Hope also argued (I think) that Greis' duty to supervise his crew constituted an assumed duty to Hildebrand. That argument is predicated, again, on language in *Kellerman,* but it is a misconstruction of it. The Court held that McDonough had assumed a duty to Jaimee which McDonough should have recognized as necessary for Jamie's protection. That is a proposition cited with the Court's approval in *Didato v. Strehler,* 262 Va. 617 (2001), of the Restatement (Second) of Torts § 323, and it provides:

---

[1] It was she alone who was a party to the conversation regarding Jaimee's not riding with inexperienced drivers, and it as she alone who promised to take good care of the child. Mr. McDonough was not implicated in any assumed duty.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.[1]

*Kellerman*, 278 Va. at 489 (citing *Didato*, 262 Va. at 629). However, that duty (and that separate cause of action by Jaimee's administrator) was not predicated on any notion of supervision of Jaimee's conduct toward others. Rather, the duty of care by McDonough arose because she had expressly undertaken to supervise (or care for) Jaimee. In the case at bar (borrowing from the Restatement), Greis undertook, "for consideration, to render services to [the Commonwealth, his employer]," but applying the language of the Restatement, his undertaking would involve "the protection of the [Commonwealth's] person or things." Hence, "his liability [would have been to the Commonwealth] for physical harm resulting from his failure to exercise reasonable care to perform his undertaking;" it would not have been to Hildebrand.

The facts in *Dowdy* are sufficiently precise (not to say peculiar) that it is somewhat surprising that the holding has been accepted on such a broad scope in addressing the landscape of negligent supervision. Nevertheless, quoting from (or sometimes paraphrasing) an earlier opinion letter that I wrote in another case:

> I am not persuaded to abandon this reasoning under the facts of the present case. In spite of the qualifying language in *Dowdy*, which appears to confine its holding to the facts of that case,[2]

---

[1] Not included in Hope's MOD is the fact that the comments to the Restatement limit the section to "any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things. It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it." RESTATEMENT OF THE LAW, SECOND, TORTS § 323, Comment a. In *Kellerman*, McDonough undertook to render services to Jaime. In the case at bar, Greis did not undertake to render services to Hildebrand; rather, he undertook to fulfill his contractual obligations to and to render services to the Commonwealth. There are no cases following the Restatement which have applied the section in the fashion Hope seeks to do.

[2] Interestingly, at the outset of the *Dowdy* decision, the Supreme Court declared, "[t]he dispositive question is whether the common law of Virginia recognizes a tort of negligent

it provides the only binding authority on the issue of whether negligent supervision is a viable tort theory under Virginia law. Although a smattering of circuit courts has confined *Dowdy* to its facts and refused to apply it generally,[1] the vast majority of circuit courts to consider this issue have refused to depart from *Dowdy*'s ostensible holding and have declined to recognize a cause of action for negligent supervision. *See, e.g., Garcia v. B & J Trucking, Inc.*, 80 Va. Cir. 633, 635 (Sussex County 2010) (declining to "chart new law," instead following the abundance of "Virginia cases that rely on the generally accepted, truncated reading of *Dowdy*, and which have not been contested"); *see also Hoover v. Epicurian, Inc.*, 85 Va. Cir. 153 (2012); *Swain v. Chippenham Johnston-Willis Hosp., Inc.*, 80 Va. Cir. 587, 587–88 (City of Richmond 2010); *Montgomery v. Ball*, 81 Va. Cir. 491, 491 (Nelson County 2008); *Woody v. Lowe's Home Centers, Inc.*, 63 Va. Cir. 461 (City of Roanoke 2003); *Stottlemyer v. Ghramm*, 60 Va. Cir. 474, 484 (City of Winchester 2001); *Permison v. Vastera, Inc.*, 51 Va. Cir. 409, 409 (Loudoun County 2000); *Courtney v. Ross Stores, Inc.*, 45 Va. Cir. 429, 432 (Fairfax County 1998); *Berry v. Scott and Stringfellow*, 45 Va. Cir. 240, 244 (City of Norfolk 1998). I also note that federal courts have virtually uniformly interpreted *Dowdy* as holding that there is no cause of action for negligent supervision under Virginia law. *See, e.g., Spencer v. Glen Elec. Co.*, 894 F.2d 651 (4th Cir. 1990), *overruled on other grounds by Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566 (1992); *Johnson v. Enterprise Leasing Co.*, 1999 U.S. App. LEXIS 15752 (4th Cir. July 13, 1999);

---

supervision of an employee by the employer and its managerial personnel." *Dowdy*, 235 Va. at 56. This is a general and expansive characterization of the issue in the case, and it would seem to belie the notion that the Court intended to rule narrowly on this issue. Oddly, however, the Court seems to have settled the question in a much more narrow context than this issue statement would suggest. Whether negligent supervision is recognized as a tort in the Commonwealth is not, after all, the sort of legal question one would expect to turn on the facts of a case. Either it is a tort or it is not. But the Court's holding, that it is not a tort *under these circumstances*, did not fully address the issue that it identified as the dispositive question presented.

[1] *See, e.g., Mangum v. Providence Hall Assocs.*, 1995 Va. Cir. LEXIS 1418 (1995) (Fairfax Co.) (overruling demurrer to negligent supervision claim "because the facts alleged here are not as limited as those present in Dowdy"); *Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314 (1996) (which conflated a claim for negligent supervision, never made by the plaintiff, with a claim for negligent retention, which the plaintiff did make); and *Hernandez v. Lowe's Home Centers, Inc.*, 83 Va. Cir. 210, 2011 (City of Norfolk) (the most persuasively reasoned case to depart from *Dowdy*).

> *Thompson v. Front Royal*, 117 F. Supp. 2d 522, 531 (W.D. Va. 2000); *Jones v. D'Souza*, 2007 U.S Dist. LEXIS 66993 (W.D. Va. Sept. 11, 2007). Given that no binding authority under the law of the Commonwealth has imposed a common law duty upon an employer in the supervision of its employees, that the Supreme Court chose not to create such a duty in its only decision to consider the issue, and that the vast majority of circuits to consider the question have resolved it against imposing such a duty, I am more than reluctant to do so in this Court. If these are circumstances that would support the imposition of such a duty, then I trust the Supreme Court, if given an opportunity, will reverse this Court and do so.

*Kiser v. Phi Air Medical*, Circuit Court of Augusta County, Case No. CL1100715, unpublished (so far as I know) letter opinion of January 11, 2012.

Accordingly, I sustain the Demurrer as to the allegations of negligent supervision.

E. *Footnote 2 of the MOS*

Assuming one can infer that the footnote constitutes a substantive part of the Demurrer, it addresses the failure to warn and negligent line painting.

1. *Failure To Warn As to Greis*

The Court's previous decision was directed only at the Commonwealth's liability for the obvious reason that, at the time I wrote the letter of April 7, 2011, Greis was not a party to the action. The question, then, is whether the Commonwealth's legislative immunity also is a shield for Greis. If the Commonwealth did not decide to warn (or decided not to warn), its decision cannot be a basis for an assertion of liability against the agent of the Commonwealth, charged with doing its bidding; Greis could not be held liable for declining to override the decision by the Commonwealth which it made in fulfilling a legislative function. Of course, (a) if the Commonwealth had decided to warn, and (b) if Greis was exercising a ministerial duty to implement that decision, and (c) if he failed properly to do so, that could expose him to a claim of negligence. I assume that it is on that issue that Hope now wants a jury trial, if he is entitled to it (a matter which I do not address in disposing of the Demurrer because a demurrer assumes facts not to be in dispute, and a jury trial assumes that there are facts in dispute).

Hope is not entitled to a jury trial on the issue as to the Commonwealth for two reasons. First, the matter has already been presented to the Court, briefed, argued, and decided against him, with prejudice. He cannot now argue that his filing an amended complaint opens the door to demand now what he did not demand earlier. Second, as to the Commonwealth, he

would only be entitled to a jury trial if there were facts at issue. Given that I have accepted the facts as alleged, there is not a factual issue for a jury to determine.

Because I dismissed the claim for failure to warn as to the Commonwealth as one barred by the special plea filed in response to the complaint (before it was amended), I will not spend more time on the issue as it relates to the Commonwealth. However, the issue currently before the Court is only the · Demurrer and not a special plea for Greis, and Hope has alleged that Greis has a "duty to warn of dangers . . . after [he] was aware of the dangerous condition," AC ¶ 23, and that he failed to do so, AC ¶ 27(e). Given that the allegations and the reasonable inferences from them suffice to support a claim of negligence against Greis, I overrule the Demurrer on the issue of failure to warn as to him.

### 2. Negligent Painting of Lines as to Both Defendants

For reasons not clear, although the defendants recognize that the initial complaint addressed only the Commonwealth, they have apparently assumed that the ruling on the demurrer to the initial complaint as to the Commonwealth on the issue of line painting controls the analysis of the expanded allegations of the AC. It does not.

In footnote 2 of the defendants' Memorandum of Law in Support of Demurrer to Amended Complaint (the MSD), the Commonwealth suggests that the Court has already disposed of the issue of the defendants' alleged negligence in painting the lines on the road. Specifically, I said there:

> The Court also finds that Hope's claim in paragraph 14(b), that the roadway lines were painted in a such as way as to lead vehicles off of the road and over the shoulder drop off, also is not necessarily barred by sovereign immunity. Although the Maddox decision indicates that "determining the need for such devices as . . . roadway markings . . . and the decision to install or not install them" are legislative functions, *Maddox*, 267 Va. at 663, this declaration does not indicate whether the physical act of painting roadway lines (as distinct from deciding whether and how to paint them) is a legislative function. However, the Complaint does not allege that the lines were negligently painted in contravention to the design or plan for the roadway. Thus, the Complaint fails to allege facts sufficient to determine whether the Commonwealth can be held liable for the alleged negligence. For this reason, the Court sustains the Commonwealth's demurrer to this allegation without prejudice.

*Hope*, 82 Va. Cir. at 473.

In the AC, Hope has alleged more particular facts, specifically that the repainting of the lines occurred after a re-paving, and that takes the issue away from construction and places it more closely into the repair or maintenance category. Even so, without more, the AC would be subject to the same defect with respect to the Commonwealth as the initial complaint. In the AC, however, there is more. In the AC, Hope alleges that the width of the northbound lane "violated highway standards for painting and delineating travel lanes." (AC ¶ 20.) As I noted in my earlier opinion (addressing ¶ 14(c)-(e) of the original complaint and modifying it to reflect this specific alleged negligence), "I may reasonably infer from this allegation (which I must assume to be true on demurrer) . . . that Hope claims the [repair] of this portion of Route 11 did not conform to the design or specifications determined by VDOT, because it would be unreasonable to assume that VDOT designed [the repair of] this portion of the road in such a way so that it violated safety standards or regulations." *Hope,* 82 Va. Cir. at 472. Hence, the allegations of the AC, and the reasonable inferences to be drawn from them, are sufficiently amplified to survive a demurrer as to the Commonwealth, so I overrule the Demurrer by the Commonwealth on the issue of negligent painting of lines.

As with the failure to warn, again, the Court's earlier decision regarding repainting was directed only at the Commonwealth's liability, and, at the time I wrote the letter of April 7, 2011, Greis was not a party to the action. Given that the issue currently before the Court is only the Demurrer and not a special plea, and given that the allegations and the reasonable inferences from them suffice to support a claim of negligence against Greis, I overrule the Demurrer on the issue of failure to warn as to him.