Present:  Lacy, Keenan, Koontz, Kinser, Lemons and Agee, JJ.

JOSHUA MADDOX, AN INFANT WHO
SUES BY HIS PARENTS AND NEXT FRIENDS,
TOM AND AMY MADDOX

v.  Record No. 031064  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    April 23, 2004
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AMELIA COUNTY
Thomas V. Warren, Judge


Joshua Maddox ("Maddox"), an infant suing by his parents and next friends, Tom and Amy Maddox, brought an action against the Commonwealth of Virginia ("Commonwealth") for personal injuries Maddox suffered in a bicycle accident.  In his motion for judgment, Maddox asserted separate claims for negligent construction and negligent maintenance of a sidewalk, and separate claims for creating a nuisance and maintaining a nuisance due to the alleged dangerous condition posed by the design of the sidewalk.  The circuit court granted the Commonwealth's plea of sovereign immunity and dismissed the motion for judgment.  Maddox appealed to this Court on the sole issue of whether a claim against the Commonwealth sounding in nuisance is barred under the doctrine of sovereign

1

immunity.[1]  Because we conclude that Maddox's nuisance claims are precluded by the legislative function exception to the Commonwealth's waiver of sovereign immunity in the Virginia Tort Claims Act ("the Act"), specifically Code § 8.01-195.3(2), we will affirm the judgment of the circuit court.

## RELEVANT FACTS[2]

Maddox was injured while riding his bicycle on a public sidewalk along Washington Street in an area known as "Amelia Village" located in Amelia County.  The front tire of his bicycle caught on the inside edge of the sidewalk, propelling Maddox and his bicycle into the air.  There was a "sharp and sudden drop off from the sidewalk into the adjoining yard."  Maddox was thrown into the yard where he landed on his left elbow, injuring it.

The sidewalk was part of a project constructed by the Commonwealth and known as "the Route 1003 State Highway Project, No. 1003-004-172-501" ("the Project").  Maddox

---

[1] Maddox has not raised on appeal any issue concerning the circuit court's dismissal of the counts alleging negligent construction and maintenance.

[2] Because the circuit court decided this case upon a plea of sovereign immunity without an evidentiary hearing, we will state the facts as alleged in the pleadings and take those facts as true for the purpose of resolving the issue presented. Niese v. City of Alexandria, 264 Va. 230, 233, 564 S.E.2d 127, 129 (2002).

2

alleged that the Commonwealth "was negligent in creating the sharp and sudden drop off from the sidewalk into the adjoining yard where the accident occurred" and in maintaining that drop off. Continuing, he asserted that the Commonwealth could have prevented the resulting dangerous condition "by constructing a retaining wall and/or adequately backfilling the adjoining area." In the negligence counts, Maddox alleged that the Commonwealth "failed to use ordinary care in both planning and constructing the changes and alterations to the area at issue" and "in the maintenance of the area."

Incorporating by reference his allegations set forth in the negligent construction and maintenance counts, Maddox further alleged that the Commonwealth created a nuisance by failing "to take measures to guard against the sharp and dangerous sidewalk ledge" and the "sharp drop off," thereby imperiling the safety of the public sidewalk. Finally, he asserted that, by allowing himself and "other members of the community to be continuously exposed to the dangerous sidewalk ledge," the Commonwealth maintained a nuisance that imperiled "the safety of the public sidewalk area at issue" and that was "dangerous and hazardous in and of itself."

ANALYSIS

This Court has previously recognized that the Commonwealth and its agencies are immune from liability for the tortious acts of their agents, employees, and servants absent express statutory or constitutional provisions waiving immunity. University of Virginia v. Carter, 267 Va. 242, 244, 591 S.E.2d 76, 78 (2004); Baumgardner v. Southwestern Virginia Mental Health Inst., 247 Va. 486, 489, 442 S.E.2d 400, 401 (1994); Virginia Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth., 217 Va. 30, 32, 225 S.E.2d 364, 367 (1976); Elizabeth River Tunnel Dist. v. Beecher, 202 Va. 452, 456-57, 117 S.E.2d 685, 689 (1961); Kellam v. School Bd. of the City of Norfolk, 202 Va. 252, 254, 117 S.E.2d 96, 97 (1960); Eriksen v. Anderson, 195 Va. 655, 657, 79 S.E.2d 597, 598 (1954). The General Assembly provided an express, limited waiver of the Commonwealth's immunity in 1981 by enacting the Virginia Tort Claims Act, Code §§ 8.01-195.1 through -195.9. Because the Act is a statute in derogation of the common law, its waiver of immunity must be strictly construed. Carter, 267 Va. at 245, 591 S.E.2d at 78; Melanson v. Commonwealth, 261 Va. 178, 181, 539 S.E.2d 433, 434 (2001); Baumgardner, 247 Va. at 489, 442 S.E.2d 402.

In pertinent part, the Act imposes liability on the Commonwealth for

4

> damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment under circumstances where the Commonwealth . . ., if a private person, would be liable to the claimant for such damage, loss, injury or death.

Code § 8.01-195.3. There are, however, exceptions to the Commonwealth's waiver of immunity. At issue here is the exception for "[a]ny claim based upon an act or omission of the General Assembly or district commission of any transportation district, or any member or staff thereof acting in his official capacity, or to the legislative function of any agency subject to the provisions of this article." Code § 8.01-195.3(2). In other words, the provisions of Code § 8.01-195.3(2) preserve the Commonwealth's immunity from liability in tort for any act or omission in the exercise of the legislative function of an agency of the Commonwealth.

Maddox argues that the term "legislative function" includes such activities as setting rates for public utilities, classifying criminal offenses, levying taxes, drafting statutes, and promulgating rules for governing prisons but does not encompass creating and maintaining a nuisance. In his view, the latter does not involve the determination of legislative policy. Relying on the statement that "[a] function is considered governmental if

5

it is the exercise of an entity's political, discretionary, or legislative authority," Carter v. Chesterfield County Health Comm'n, 259 Va. 588, 591, 527 S.E.2d 783, 785 (2000), Maddox posits that "an agency's 'legislative function' is a subset of its broader governmental function" and that the two terms, therefore, cannot be used interchangeably.  Finally, he asserts that the rationale used in Taylor v. City of Charlottesville, 240 Va. 367, 397 S.E.2d 832 (1990), to hold that sovereign immunity did not bar a nuisance claim against a municipality is applicable to the facts of the present case and defeats the Commonwealth's claim of sovereign immunity.  We do not agree with Maddox's arguments.

A sidewalk such as the one at issue is, by definition, part of a street.  See Messick v. Barham, 194 Va. 382, 387, 73 S.E.2d 530, 533 (1952) ("It is generally accepted that the word 'street' is all inclusive and means all that portion of a highway set apart and designated for such use, that is, embraces both that portion of the highway set apart for vehicular traffic and that part set aside for pedestrians"); McCrowell v. City of Bristol, 89 Va. 652, 662, 16 S.E. 867, 870 (1893) ("It is true that a sidewalk along a public street is part of the street").  In Virginia, the General Assembly "has supreme powers to open,

6

improve, repair, discontinue, or abandon public highways."
Ord v. Fugate, 207 Va. 752, 759, 152 S.E.2d 54, 59 (1967)
(citing former Constitution of Virginia, § 63; City of
Lynchburg v. Peters, 145 Va. 1, 9, 133 S.E. 674, 677
(1926)). But, of course, "[p]ractical necessity requires
that the administration of those powers be delegated to
appropriate subordinate officials, and this the legislature
has done." Ord, 207 Va. at 759, 152 S.E.2d at 59. The
General Assembly has delegated to the Commonwealth
Transportation Board and the Department of Transportation
authority over the supervision, management, construction,
improvement, and maintenance of public highways and roads.
See e.g. Code §§ 33.1-12, -25, -49, and -69.

The issue here is whether the alleged acts or
omissions by an agency of the Commonwealth in regard to the
sidewalk fall within the "legislative function" exception
to the Commonwealth's waiver of immunity. Resolution of
that issue does not turn on the theory of tort liability
asserted by Maddox. In both nuisance claims, the only acts
or omissions on the part of the Commonwealth alleged by
Maddox were the failure to construct a retaining wall along
the edge of the sidewalk and/or to backfill the adjoining
yard. Thus, Maddox must rely on those allegations to
support his claims for creating and maintaining a nuisance.

See Hawthorn v. City of Richmond, 253 Va. 283, 289, 484 S.E.2d 603, 606 (1997). Maddox did not allege that the sidewalk's construction had deviated from the Project's plans or that the sidewalk had fallen into a state of disrepair.

In the context of streets controlled by a municipality, we have held that, when a municipality selects and adopts a plan for the construction of its public streets, it "acts in a governmental capacity." City of Norfolk v. Hall, 175 Va. 545, 551-52, 9 S.E.2d 356, 359 (1940). Further, determining the need for such devices as "[t]raffic lights, blinking lights, warning signals, roadway markings, railings, barriers, guardrails, [and] curbings" and "the decision to install or not to install them calls for the exercise of discretion." Freeman v. City of Norfolk, 221 Va. 57, 60, 266 S.E.2d 885, 886 (1980); see also Taylor, 240 Va. at 370, 397 S.E.2d at 835 (a city's failure "to use reasonable care to install lights, a barricade, and other safety devices, and in designing and constructing" a particular street involved discretionary governmental functions). In exercising that discretion, a municipality "is performing a governmental function and is not liable for its negligent performance of the function." Freeman, 221 Va. at 60, 266 S.E.2d at 886.

8

For purposes of today's decision, we do not equate a municipality's exercise of a governmental function with the exercise of a legislative function by an agency of the Commonwealth. However, the rationale underlying our decisions holding that a municipality's planning and designing its streets is a governmental function also supports the conclusion that the design of a sidewalk by an agency of the Commonwealth is a legislative function. In either instance, the decision-making process by the municipality or the state agency entails the exercise of discretion. Deciding whether the plan and design of the sidewalk at issue would include installing a guardrail along the edge of the sidewalk and/or backfilling the area adjacent to the sidewalk necessarily called for the exercise of discretion by an agency of the Commonwealth. It required the agency to determine whether public funds should be expended to install those particular safety features. Thus, the alleged acts or omissions in this case were a legislative function.

> [T]he right to regulate the use of the highways of the State or of the streets of a city is clearly a governmental power, and its exercise, whether by the State or by a municipal corporation as an agency of the State, is legislative and discretionary; and being legislative and discretionary, a municipal corporation, as an arm of the State, is no more liable for the failure to exercise the power or

9

for its improper exercise than the State itself would be.

Jones v. City of Williamsburg, 97 Va. 722, 725, 34 S.E. 883, 883 (1900).

Our decision in Taylor v. City of Charlottesville, does not, as asserted by Maddox, support a contrary conclusion. There, the city had "placed no signs, guardrails, lights, reflectors, painted lines, sidewalks, or curbs to mark the end of [a] road" beyond which lay the edge of a steep precipice. 240 Va. at 369, 397 S.E.2d at 834. The city's site plan for the street reflected the defective and dangerous condition. Id. Among other things, the plaintiffs sought recovery for wrongful death on the basis that the city had created and maintained a public nuisance. Id. at 372, 397 S.E.2d at 835. We reversed the trial court's judgment sustaining the city's demurrer to the nuisance count. Id. at 374, 397 S.E.2d at 837. In reaching that conclusion, we restated the rule "that if a municipal corporation creates or maintains a nuisance, it is not protected by the immunity doctrine unless (1) the condition claimed to be a nuisance is authorized by law, and (2) the act creating or maintaining the nuisance is performed without negligence." Id. at 373,

10

397 S.E.2d at 836 (citing Virginia Beach v. Steel Fishing Pier, 212 Va. 425, 427, 184 S.E.2d 749, 750-51 (1971)).

We also concluded in Taylor that the city's reliance upon our decision in Kellam v. School Board, 202 Va. 252, 117 S.E.2d 96 (1960), was misplaced because Kellam involved a school board, which was a state agency and not a true municipal corporation as was the City of Charlottesville. Id. at 374, 397 S.E.2d at 836. In Kellam, the plaintiff slipped and fell as she walked down the aisle of a school auditorium. 202 Va. at 253, 117 S.E.2d at 97. She sued the school board alleging that the board had failed to maintain the aisle in a reasonably safe condition and that the aisle was dangerous and constituted a nuisance. Id. The Court held that the school board had acted in a governmental capacity and was therefore immune from liability for both the negligence and nuisance claims. Id. at 257-58, 117 S.E. at 99-100.

Specifically with regard to the latter claim, we emphasized that a school board is an agent or instrumentality of the state, not a true municipality, and therefore " 'partake[s] of the state's sovereignty with respect to tort liability.' " Id. at 259, 117 S.E.2d at 100 (quoting Bingham v. Board of Education of Ogden City, 223 P.2d 432, 436 (Utah 1950)). In other words, we did not

11

strip away the school board's immunity derived from its status as an arm of the state merely because the plaintiff there sought recovery for injuries sustained as a result of an alleged nuisance.[3]  Nor do we strip away the Commonwealth's immunity in this case merely because Maddox sought recovery for injuries resulting from an alleged nuisance.  As already stated, the pertinent inquiry is whether the alleged acts or omissions arose out of the exercise of a legislative function by an agency of the Commonwealth.

CONCLUSION

In preserving the Commonwealth's absolute immunity for claims arising out of its agencies' exercise of legislative functions, the Act does not distinguish among theories of tort liability or " 'the adjectives used in the complaint.' " Kellam, 202 Va. at 259, 117 S.E.2d at 100 (quoting Bingham, 223 P.2d at 436).  Because the nuisance claims in this case are predicated on the acts or omissions of an agency of the Commonwealth in the design of the sidewalk, those claims are barred by the "legislative function" exception to the Commonwealth's waiver of

---

[3]  We recognize that Kellam was decided before the passage of the Act.

sovereign immunity.  <u>See</u> Code § 8.01-195.3(2).  Therefore, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.
