COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and Callins
Argued at Richmond, Virginia

**PUBLISHED**

COMMONWEALTH OF VIRGINIA

v.        Record No. 0618-22-2

HANNAH FATIMA MUWAHHID

OPINION BY
JUDGE GLEN A. HUFF
JUNE 13, 2023

FROM THE CIRCUIT COURT OF SUSSEX COUNTY
Carson E. Saunders, Jr., Judge

D. Patricia Wallace, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Christopher M. Okay for appellee.

In this interlocutory appeal, the Commonwealth challenges the trial court's denial of its

plea of sovereign immunity to shield itself from a suit brought by Hannah Fatima Muwahhid

("appellee").[1]  Appellee sued the Commonwealth under the Virginia Tort Claims Act ("VTCA")

---

[1] On January 1, 2022, by amendment to Code § 8.01-675.5(B), the General Assembly
granted this Court jurisdiction over appeals "granting or denying a plea of sovereign[] . . .
immunity."  2021 Va. Acts Spec. Sess. I ch. 489.  It then rescinded that jurisdiction several
months later, on July 1, 2022, giving the Virginia Supreme Court exclusive jurisdiction over
those appeals.  2022 Va. Acts ch. 307 (codified at Code § 8.01-675.5(B) (2022)).  That
legislation, however, included a savings clause, ensuring

> [t]hat any case affected by the provisions of this act for which a
> petition for review to the Court of Appeals has been filed prior to
> July 1, 2022, shall continue in the Court of Appeals of Virginia
> and, if further review is sought, in the Supreme Court of Virginia,
> and shall not be affected by the provisions of this act.

*Id.*  The Commonwealth filed its petition for review in this case on April 22, 2022.
    On April 12, 2023—just after this Court held oral argument for this case—Code
§ 8.01-675.5(B) was recodified at Code § 8.01-670.2(A), effective immediately and without a
savings clause.  2023 Va. Acts ch. 741.  Based on the new statutory language, this Court believed
it no longer had jurisdiction over the case and transferred it to the Virginia Supreme Court on

after she was allegedly mistreated by prison staff on multiple occasions while trying to visit her husband, a prison inmate.

The Commonwealth first contends the VTCA does not waive sovereign immunity when the Commonwealth performs any governmental function. It argues the government, not private persons, operate prisons, and so the Commonwealth cannot be sued for wrongful actions related to prison operation. The Commonwealth next claims the trial court erred in viewing the VTCA's private-person clause and legislative-function exception as "coextensive." Because the Commonwealth is incorrect on both points,[2] this Court disagrees and affirms.

BACKGROUND

This Court accepts the facts alleged by the plaintiff in her pleadings as true. *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002). Those facts are as follows:

Appellee's husband was an inmate at the Sussex II State Prison in Waverly, Virginia. Appellee alleges she was mistreated by Virginia Department of Corrections ("VADOC") corrections officers while trying to visit her husband on multiple occasions in 2019. Before the first incident, she visited her husband "on at least 45 . . . occasions over a span of approximately four months without incident."

Then, on June 2, 2019, appellee was called back to the prison entrance after screening and told by corrections officers they detected something in or on her person during the scan. The

_____

April 19. On May 30, a three-justice panel of the Supreme Court issued an order "[f]inding that the Court of Appeals retains jurisdiction over the petition for review filed on April 22, 2022" and thus remanded the case. Consistent with the Supreme Court's direction, this Court now addresses the merits.

[2] The Commonwealth also claims the trial court erred in "judicially creating a waiver" of sovereign immunity and in concluding that, if it adopted the Commonwealth's interpretation of the statute, "there would be no liability for prison officials who violate the rights of prisoners or visitors, and no redress for these kinds of injuries." Those two assignments of error necessarily rely on the Commonwealth's primary argument about the private-person clause, so this Court need not reach them.

officers explained that, as a result, she could have only a no-contact visit with her husband that day.

On June 16, appellee was stopped at the prison's front entrance and told she was banned from visitation because she had tried to "introduce contraband into the visitation room."

After these experiences, appellee sent an email on June 27 to VADOC officials detailing how she was "singled out for particularly harsh and unlawful treatment and scrutiny." In that email, she also mentioned derogatory comments she overheard regarding her religious clothing. She also alleged in the email that her husband's religious liberty was being violated because he was prohibited from participating in Eid prayers and weekly Jumu'ah services, as required by his faith.

On July 28, she was again subjected to additional searches while trying to visit her husband. First, she was stopped while entering the prison and told that a K-9 alerted to her. The officers gave no other reason for her detention. They told her she would have to agree to a full body strip and cavity search to attend a no-contact visit with her husband—otherwise, she could lose her visitation privileges. Because of that, appellee acquiesced to a full-body strip and cavity search.[3] The officers also told appellee she would have to agree to a search of her car before entering the prison. Again, because of the officers' warnings of the consequences if she refused, she acquiesced to the search.

On August 10, appellee was searched twice more by a K-9 and K-9 handler even though she never saw the dog alert to her. She then had to undergo a pat-down search, during which she had to disrobe and remove her hijab. As she undressed, the officers left the door open.[4]

---

[3] Appellee alleges she never consented to any of the searches, and even if she did, any consent was involuntary.

[4] Appellee alleges the officers' action of leaving the door open as she undressed offended her religious tenets.

- 3 -

Appellee sent additional emails to VADOC officials and later met with a VADOC administrator, Gregory L. Holloway, on August 24, to report these incidents and express her discontent over her treatment.

But on October 26, after another K-9 search of appellee, corrections officers told her the dog alerted to her and required her to undergo another strip and cavity search before visiting her husband. Appellee never saw the dog alert to her.

Then, on January 14, 2020, appellee's husband was transferred to Green Rock Correctional Center, located three-and-a-half hours away from Henrico County, Virginia, where appellee then lived. Appellee alleges her husband's transfer was in retaliation for her complaints. She denies ever carrying, or attempting to carry, contraband into the prison despite the officers' allegations to the contrary, and she asserts the officers had no other justification for the searches. Officers never recovered contraband from any of the searches of appellee or her car.

Appellee filed a complaint in the Sussex County Circuit Court (the "trial court") on March 15, 2021, asserting the foregoing facts and naming several VADOC employees and the Commonwealth as defendants.[5] Count I asserts a claim under the VTCA, assigning liability to the Commonwealth for the alleged tortious acts of the VADOC employees.[6] Her complaint alleged the officers "breached their duty of ordinary care" owed to her and "acted wrongfully" during her multiple visits to the prison.[7]

_____

[5] As required by the VTCA, before filing suit, appellee sent notice of her VTCA claim by certified mail to the Virginia Attorney General's office on January 24, 2020.

[6] The remaining four counts, not at issue in this appeal, were brought against the named defendants under 42 U.S.C. § 1983, asserting violations of her First and Fourth Amendment rights and seeking damages, injunctive relief, and declaratory relief.

[7] Appellee further alleged the officers breached duties owed to her under "the U.S. Constitution, the Constitution of the Commonwealth . . . , [Code] Sections

- 4 -

The Commonwealth filed a plea of sovereign immunity and motion to dismiss, which the trial court heard on November 8, 2021. In its plea, the Commonwealth asserted the VTCA "limit[s] [its] waiver of immunity to only those matters where a private person could be liable" and thus "preserves immunity for exclusively governmental functions," such as operating a prison. As support, it cited to *Shenk v. Spangler*, 46 Va. Cir. 277 (1998), from the Rockingham County Circuit Court. The *Shenk* court held the Commonwealth was immune from claims alleging negligence by the Virginia State Police in determining which officers could operate police cruisers because "'private persons' do not and cannot have, under our legal system, a liability for . . . determining which individuals will be entrusted with police cruisers while engaged in carrying out their law enforcement obligations." *Id.* at 281-82.

The trial court did not rule from the bench on the plea or motion and instead issued a letter opinion to the parties on January 14, 2022. In its opinion, the trial court distinguished *Shenk*, explaining that the *Shenk* court ruled that immunity barred allegations of "[n]egligence in the promulgation of rules, regulations, and protocols," but found no immunity for claims alleging negligence in the way the officer "operated his cruiser." The trial court here went on to conclude that

> [t]he creation of policies governing who may enter a prison is indeed a legislative function of an agency for which the Commonwealth is immune, and when their enforcement is mandatory, that immunity remains. Yet when the enforcement of these rules is alleged to be negligent or discriminatory, the function becomes discretionary, thereby eliminating the defense of immunity.

19.2-59, -59.1,[ ]-81.2, . . . and applicable laws and procedures, including VADOC Operating Procedures 851.1, 445.1[,] and other policies."

She also alleged the "described breaches of the duty of ordinary care by VADOC employees to the Plaintiff were and are the proximate cause [her] damages . . . and personal injury," and her prayer for relief requests, in total, $500,000 for "VADOC employees' negligent and wrongful acts."

The Commonwealth has not asserted, either here or below, that appellee has failed to allege tortious or wrongful conduct.

The court accordingly denied the Commonwealth's plea of sovereign immunity, later issuing an order to that effect on April 7, 2022.[8]  The Commonwealth reiterated its argument in written objections to the order and filed a petition for review on April 22, 2022, which this Court granted on May 26.

STANDARD OF REVIEW

The Commonwealth appeals the trial court's denial of the plea in bar for sovereign immunity.  "Where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *Niese*, 264 Va. at 233).  While "[t]he facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea," *Niese*, 264 Va. at 233, "[t]he existence of sovereign immunity is a question of law that is reviewed de novo," *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004).  The VTCA "must be strictly construed" as it is "a statute in derogation of the common law," but this Court must still look to the "plain meaning" of the statute's express terms.  *See Baumgardner v. Sw. Va. Mental Health Inst.*, 247 Va. 486, 489 (1994); *see also Hannabass v. Ryan*, 164 Va. 519, 525 (1935) ("The common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested.").

ANALYSIS

I.  The Private-Person Clause

Under the doctrine of sovereign immunity, "the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees," unless an

---

[8] In its letter opinion, the trial court also ruled that appellee's notice to the Commonwealth of her VTCA claim was proper, denied the named defendants' demurrer to the remaining four counts brought under 42 U.S.C. § 1983, and denied the named defendants' demurrers as to appellee's request for declaratory and injunctive relief.

"express statutory or constitutional provision[] waiv[es] immunity." *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001).[9] Such a waiver "will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *All. to Save the Mattaponi v. Commonwealth*, 270 Va. 423, 455 (2005).

In 1981, the General Assembly enacted a limited waiver of sovereign immunity through the VTCA, codified at Code §§ 8.01-195.1 through -195.9. The VTCA subjects the Commonwealth, under certain circumstances, to liability for "negligent or wrongful act[s] or omission[s]." Code § 8.01-195.3. Specifically, the statute states, in relevant part, that

> the Commonwealth shall be liable for claims for money . . . on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment under circumstances where the Commonwealth . . . , *if a private person*, would be liable to the claimant for such damage, loss, injury or death.

*Id.* (emphasis added).

The Commonwealth's primary argument seizes on the emphasized language above— referred to here as the "private-person clause." The clause, the Commonwealth claims, refers to the function the Commonwealth's employees are performing when they commit an allegedly tortious act. A private person cannot operate a prison, says the Commonwealth.[10] That is instead a "governmental function" for which the Commonwealth cannot be liable. Put simply, the Commonwealth reads the VTCA to maintain its immunity from tort liability where the allegedly tortious act or omission arises from the performance of *any* governmental function.

---

[9] Additionally, Congress may, in certain circumstances, abrogate States' sovereign immunity, subjecting them to suit in federal court. *See Alden v. Maine*, 527 U.S. 706, 748-49 (1999); *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 725 (2003).

[10] The Commonwealth conceded below and on brief that, by statute, prisons in Virginia may be privately operated and one Virginia prison is privately operated. *See* Code §§ 53.1-261 through -266 ("Corrections Private Management Act").

This interpretation misunderstands the plain meaning of the VTCA. Read in context, the clause waives sovereign immunity "under those circumstances where . . . a private person[] would be liable to the claimant." *Id.* That language poses a hypothetical. It focuses not on whether a private person "could" perform the same activity but whether liability "would" exist if the Commonwealth were swapped with a private person. If a claimant would have a legitimate cause of action against a private person under traditional tort principles—duty, breach, proximate causation, and damages—then the Commonwealth has waived its immunity for such a claim and may be liable just as a private person would.

The VTCA's enumerated exceptions reveal the fallacy of the Commonwealth's interpretation. Almost all of the statute's exceptions refer to governmental functions. One, the "legislative-function exception," retains immunity for "[a]ny claim based upon an act or omission of the General Assembly or district commission of any transportation district, or any member of staff thereof acting in his official capacity, or to the legislative function of any agency subject to the provisions of this article." Code § 8.01-195.3(2). Another, the "judicial-function exception," precludes liability for "[a]ny claim based upon an act or omission of any court of the Commonwealth, or any member thereof acting in his official capacity, or to the judicial functions of any agency subject to the provisions of this article." Code § 8.01-195.3(3). Other exceptions maintain immunity for "[a]ny claim based upon an act or omission . . . in the execution of lawful order of any court," as well as those "arising out of the institution or prosecution of any judicial or administrative proceeding, even if without probable cause." Code § 8.01-195.3(4), (6). Yet another ensures the Commonwealth cannot be sued for "[a]ny claim arising in connection with the assessment or collection of taxes." Code § 8.01-195.3(5).

Were the private-person clause to mean that the VTCA does not waive sovereign immunity whenever the government performs *any* governmental function, then the VTCA would

not need any of the explicit exceptions listed above—all of which describe quintessential governmental functions. The Commonwealth's interpretation would thus render those specific exclusions surplusage. *Shoemaker v. Funkhouser*, 299 Va. 471, 487 (2021) ("We disfavor a construction of statutes that renders any part of the statute useless or superfluous."); *see also Postal Tel. Cable Co. v. Norfolk & W. R. Co.*, 88 Va. 920, 926 (1892) ("It is not presumed that the legislature intended any part of [a] statute to be without meaning.").[11]

Moreover, the Commonwealth's interpretation makes little sense because it would graft the test used to determine whether sovereign immunity shields municipalities onto a statute that waives immunity for the Commonwealth. Unlike the Commonwealth, which may always claim sovereign immunity absent a waiver, municipalities are not always entitled to sovereign immunity. Instead, "[s]overeign immunity protects municipalities from tort liability arising from the exercise of *governmental functions*"—that is, those "powers and duties performed exclusively for the public welfare"—but not for "proprietary functions," which "are performed primarily for the benefit of the municipality." *Cunningham*, 268 Va. at 633-34 (emphasis added).

In contrast, the VTCA addresses only the Commonwealth's sovereign immunity, and nothing in the plain text of the private-person clause or its surrounding language suggests the distinct test for municipal liability should apply. *Cf. Rector & Visitors of the Univ. of Va. v.*

---

[11] The government's actions, however, remain relevant in defining the duty owed under the circumstances, for the Commonwealth is liable only under circumstances in which a private person would owe a duty. If a private person could not owe such a duty under those circumstances, the Commonwealth has not waived sovereign immunity. *See, e.g.*, *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health and Hum. Srvs.*, 881 S.E.2d 558, 573 (N.C. 2022) (rejecting a claim for "negligent regulation" because "[p]rivate persons do not, of course, exercise regulatory power and, therefore, cannot be held liable for engaging in regulatory activities in a negligent manner"). And separately, the VTCA's exceptions might preclude liability even if a private person, and therefore the Commonwealth, would owe a duty. *See* Code § 8.01-195.3(2)-(6) (listing exceptions).

*Carter*, 267 Va. 242, 245 (2004) ("Under the plain language of the [VTCA], the Commonwealth (and certain 'transportation districts' not here relevant) are the *only* entities for which sovereign immunity is waived." (emphasis added)).[12]  If the legislature intended to incorporate the well-established municipal-liability test into VTCA's main text, and thus retain the Commonwealth's sovereign immunity for *all* governmental functions, it likely would have done so using similar language.  *See Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) ("We presume that the legislature chose, with care, the specific words of the statute and that [t]he act of choosing carefully some words necessarily implies others are omitted with equal care." (alteration in original) (internal quotation marks omitted) (quoting *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020))).  This Court cannot stretch the private-person clause in a way that "read[s] into [the] statute language that the legislature chose not to include." *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296, 304 (2020).

Given the express language of the VTCA, the legislature's manifest intent was to waive the Commonwealth's sovereign immunity for tort claims up to the same extent that a private person would be liable for the same conduct under traditional tort principles.  This interpretation is consistent with how the Virginia Supreme Court has applied the VTCA.  *See, e.g.*, *Cline v. Commonwealth*, No. 151037, slip op. at 2 (Va. Sept. 8, 2016) (unpublished order) ("Thus, if under the same circumstances, *a private person owed no duty to Cline*, the Commonwealth is

---

[12] The municipal-liability test can be relevant, however, to the application of the legislative-function exception of the VTCA, found in Code § 8.01-195.3(2).  *See Maddox ex rel. Maddox v. Commonwealth*, 267 Va. 657, 663 (2004) (noting "the rationale underlying our decisions holding that a municipality's planning and designing its streets is a *governmental function* . . . supports the conclusion that the design of a sidewalk by an agency of the Commonwealth is a *legislative function*," but "we do not equate a municipality's exercise of a governmental function with the exercise of a legislative action by an agency of the Commonwealth" (emphases added)); *see also infra* at 12.

immune from liability." (emphasis added)).[13] It is also consistent with how the United States Supreme Court has interpreted the Federal Tort Claims Act ("FTCA") for almost 70 years—a statute that contains language similar to the VTCA. *Indian Towing Co. v. United States*, 350 U.S. 61, 64-68 (1955).[14] Other States have interpreted their analogous tort claims acts in the same way.[15] This Court sees no reason to depart from that longstanding interpretation of the

---

[13] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); *see also* Rule 5A:1(f).

[14] The Court in *Indian Towing* interpreted multiple provisions of the FTCA in coming to its conclusion. One grants federal district courts

> exclusive jurisdiction of civil actions on claims against the United States, for money damages[] . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). Another, 28 U.S.C. § 2674, states, "The United States shall be liable[] . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." This quoted language, interpreted in *Indian Towing*, has not been changed since those provisions were enacted in 1948.

[15] *See, e.g.*, *Doe v. State*, 980 N.W.2d 842, 678-79 (Neb. 2022) (noting the Nebraska Tort Claims Act's provisions waive immunity for "liability on the part of the State under the same circumstances under which a private person would be liable" (quoting *Cortes v. State*, 218 N.W.2d 214, 216 (1974))); *Cedarbrook Residential Ctr.*, 881 S.E.2d at 574 ("[T]he State Tort Claims Act permits an individual to sue the State when an agent or employee of the State acts in a negligent manner and under circumstances in which liability in tort would arise under North Carolina law if that agent or employee were acting in his or her private capacity."); *Regents of Univ. of Cal. v. Superior Ct.*, 413 P.3d 656, 663 (Cal. 2018) (relying on "ordinary and general principals of tort law" to determine whether a public employee, and therefore the public employer, was liable "to the same extent as a private person" under Cal. Gov't Code § 820(a)); *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) (interpreting Fla. Stat. Ann. § 768.28(1) (West 2022), which waives sovereign immunity "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant," to find that "there can be no governmental liability unless a common-law or statutory duty of care existed that would have applied to an individual under like circumstances").

words used in the VTCA. *Cf. Loudoun County v. Richardson*, 298 Va. 528, 537-38 (2020) ("We recognize the wisdom in leaving undisturbed '[t]hat construction which for a long period of time has been accepted by bench and bar as the true construction of a statute,' particularly as no 'paramount reason [has been] advanced for a change of the conclusion.'" (alterations in original) (quoting *Miller v. Commonwealth*, 180 Va. 36, 41 (1942))). Accordingly, the trial court did not err in rejecting the Commonwealth's interpretation.

## II. The Trial Court's Application of the Legislative-Function Exception

In its second assignment of error, the Commonwealth asserts "the trial court erred interpreting the VTCA's private-person clause as coextensive with the statute's legislative[-]function exception" in Code § 8.01-195.3(2). The Commonwealth further notes it never asserted immunity under the legislative-function exception.

While the Commonwealth did not raise the legislative-function exception below, its argument that the immunity remains for all "governmental functions" explains why the trial court analyzed whether appellee's allegations fell under the legislative-function exception. While a legislative activity is always a governmental activity, the reverse is not necessarily true. It was therefore the Commonwealth, not the trial court, that confused the issues by collapsing the legislative-function exception within its interpretation of the private-person clause. The doctrines are separate, and the trial court conducted its own analysis of whether the legislative-function exception would foreclose liability. Just as the trial court concluded, appellee's claim does not implicate a legislative function.

In *Maddox ex rel. Maddox v. Commonwealth*, 267 Va. 657, 660 (2004), a child's parents sued the Commonwealth for an injury the child suffered from an allegedly negligently designed sidewalk. The Virginia Supreme Court held that designing the sidewalk was an "exercise of discretion" that "required the agency to determine whether public funds should be expended to

- 12 -

install . . . particular safety features," and as such "the alleged negligent acts or omissions in [the] case were a legislative function" under the VTCA's exception. *Id.* at 663. Accordingly, sovereign immunity applied. *Id.* The Court noted that "the rationale underlying [its] decisions holding that a municipality's planning and designing its streets is a *governmental function* . . . supports the conclusion that the design of a sidewalk by an agency of the Commonwealth is a *legislative function*." *Id.* (emphases added). The Court clarified, though, that while the municipal-liability test was a relevant consideration, it was not "equat[ing] a municipality's exercise of a governmental function with the exercise of a legislative action by an agency of the Commonwealth." *Id.*

Appellee alleges negligence not in the way VADOC employees adopted policy but instead in how they executed those policies, including their failure to follow existing policy and procedures. Unlike the design of a sidewalk, the corrections officers' alleged actions did not involve discretionary policy decisions such as "determin[ing] whether public funds should be expended." *See id.* The execution of policies and procedures is not a legislative function. And under the private-person clause, the Commonwealth may still be liable for those sorts of actions. The trial court therefore did not err in concluding the legislative-function exception does not bar appellee's claim.

CONCLUSION

The Commonwealth's interpretation of the VTCA only confuses the private-person clause with the municipal-liability test and the legislative-function exception by collapsing them all into one doctrine. The four words of the private-person clause do not create that result. The trial court therefore did not err in rejecting that interpretation. Nor did it err in its application of

the legislative-function exception, which does not apply here and consequently does not bar appellee's claim.[16]  For those reasons, this Court affirms.

*Affirmed.*

---

[16] These conclusions do not discount any possible affirmative defenses the Commonwealth may raise, nor do they preclude the Commonwealth from filing future pleas of sovereign immunity.  *See Afzall ex rel. Afzall v. Commonwealth*, 273 Va. 226, 230 (2007) ("[T]he Commonwealth can raise the defense of sovereign immunity for the first time on appeal because if sovereign immunity applies, the court is without subject matter jurisdiction to adjudicate the claim.").  Nor does this Court's conclusion say anything of the merits of appellee's claims.